INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY v.
HENRY ANDERSON.

No. 3262.

1. **Res Gestæ.**—All declarations or exclamations uttered by the parties to a transaction, and which are contemporaneous with and accompany it, and are calculated to throw light upon the motives and intentions of the parties to it, are clearly admissible as parts of the res gestæ.

2. **Same.**—The rule of decision adopted in this State admits as parts of the res gestæ not only such declarations as accompany the transaction, but also such as are made under such circumstances as will raise a reasonable presumption that they are the spontaneous utterance of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they were the result of premeditation or design. See example.

3. **Liability of Master for Act of Servant.**—Suit for personal injuries caused by act of a brakeman in forcing plaintiff from a freight train. The court charged the jury "that a railway company is not responsible for the willful trespass or unlawful acts of its agents done clearly outside of the scope of their employment; but when a brakeman on a train undertakes to keep persons from getting on his train, or to expel them, in the absence of proof to show that this was outside of the scope of his duties there would be no presumption that such was the fact." This practically cast the burden of proof upon the defendant. The burden was upon the plaintiff to show that the servant was acting within the scope of his authority.

4. **Same.**—To render the master liable for the act of his servant it must be done within the scope of the general authority of the servant, in the furtherance of the

master's business, and for the accomplishment of the object for which the servant is employed.

5. **Conductor—Brakeman.** — The conductor is recognized as the master of the train. The brakeman would seem restricted to the business indicated by the name applied to the service; and there does not appear any necessity for conferring upon a brakeman authority to keep trespassers from the train. The conductor has such power.

6. **Briefs, Form of.** — Assignments of error should not be all grouped together, but each should be presented separately, with its appropriate propositions and statements under it.

APPEAL from Rusk. Tried below before Hon. A. J. BOOTY.

The opinion states the case.

*N. B. Morris* and *Gould & Camp*, for appellant.—1. The declarations of the brakeman as to giving plaintiff permission to ride on a freight train being made outside of his authority, as plaintiff knew, could not bind defendant company, and should not have been permitted in evidence against defendant. Gilleland v. Drake, 36 Texas, 676; Noel v. Denman, 76 Texas, 306; 1 Ct. App. C. C., sec. 291; Walsh v. Ins. Co., 73 N. Y., 5; Patterson v. Railway, 18 Am. and Eng. Ry. Cases, 130; The State v. Railway, 19 Am. and Eng. Ry. Cases, 83.

2. The declarations of plaintiff as to the cause of his injuries, made so long after the injury as not to be a part of the res gestæ, and while he was unconscious, were not proper testimony. Wadele v. Railway, 19 Am. and Eng. Ry. Cases, 400.

3. The master is not responsible for the acts of a servant done outside of the duties for which he was employed, and the court should have instructed the jury on that subject, as requested. Railway v. Moore, 49 Texas, 31; Railway v. Beggs, 85 Ill., 80; Railway v. Brooks, 81 Ill., 245; Story on Agency, secs. 318, 456.

*W. C. Buford, W. J. Graham,* and *J. H. Turner,* for appellee.—1. A declaration so nearly contemporaneous with an event spoken about as to preclude the idea of premeditation or a formed design to color the facts is admissible to show the nature of the transaction. Dukey v. Railway, 25 Am. and Eng. Ry. Cases, 350; McGowen v. McGowen, 52 Texas, 665; City of Galveston v. Barbour, 62 Texas, 175, 176.

2. A master is responsible for the acts of his servant done within the apparent scope of his authority, and where a railway company puts its train in charge of a conductor with instructions to allow no passengers on such train, and this rule is commonly or habitually enforced through the trainmen or brakemen, then the company becomes responsible for the manner in which they do it. Hull v. Railway, 66 Texas, 620; Cook v. Nav. Co., 76 Texas, 357.

3. A master may be held responsible for the acts of his servants, even though they be in direct opposition to his orders or directions.

It is not the law of this State that a railway company owes no duty to any one except a passenger or employe. Authorities supra; Railway v. Hewitt, 67 Texas, 473; 54 Texas, 615; Railway v. Smith, 52 Texas, 178; 73 Texas, 195; 65 Texas, 443; Field on Corp., secs. 524, 533; Ins. Co. v. Mosley, 8 Wall., 409; Shearm. and Redf. on Neg., 141–150.

4. The burden of proof is on the plaintiff to establish his case, but when the defendant sets up affirmative matter for relief the burden is on him to establish it after a prima facie case has been made by plaintiff, and when testimony comes from both parties the court should not direct the attention of the jury to the party from whom it may come. Railway v. Spicker, 61 Texas, 427; Blum v. Strong, 71 Texas, 322; 65 Texas, 124.

GAINES, Associate Justice.—This action was brought by appellee to recover of appellant damages for personal injuries alleged to have been inflicted by a servant of the company. The case made by the pleadings and proof by the plaintiff was, that as a freight train of the defendant company was drawing out of a station he attempted to board a box car by means of the ladder, and that thereupon a brakeman accosted him roughly and ordered him off. He objected on account of the speed of the train; but the brakeman repeated his order and struck him a blow which caused him to fall under the wheels and to receive the injuries of which he complains. On behalf of the railway company it was claimed in defense, first, that the plaintiff was not interfered with by the brakeman, and that he negligently attempted to board the car while in motion and was thrown to the ground; and secondly, that if he was struck by the brakeman, the act was not done in the scope of the latter's employment.

The testimony showed that the plaintiff fell from a car and that the wheels passed over him, crushing his arm and breaking his leg. The controversy was as to the cause of the accident. A witness was permitted to testify, over objection of defendant, "that on the morning of the accident he heard a train going south, and just after it passed he heard some one that he took to be plaintiff crying for help. This was about 150 or 200 yards from witness' house. He immediately got up out of bed and put on his clothes and went hurriedly to where plaintiff was lying, near the railway track, badly hurt by the train. No person was there when witness got there. The conductor and other trainmen were in a short distance, coming in that direction. Before they got there plaintiff told witness that a brakeman knocked him off the train, and it ran over him. That the plaintiff was crying out in his misery, and made the statement several times."

An exception was reserved to the admission of the testimony, and it is now assigned as error.

Were the declarations of plaintiff admissible as a part of the res gestæ? All declarations or exclamations uttered by the parties to a transaction, and which are contemporaneous with and accompany it, and are calculated to throw light upon the motives and intention of the parties to it, are clearly admissible as parts of the res gestæ. Very respectable authorities restrict the doctrine of res gestæ within the limits indicated by the foregoing definition, and exclude all declarations which are a narrative of past occurrences. This is a convenient and salutary rule, and probably the more logical one; and if it were an open question in this State we should hesitate long before adopting another. Another rule, applied in many of the American courts at least, is to admit as parts of the res gestæ not only such declarations as accompany the transaction, but also such as are made under such circumstances as will raise a reasonable presumption that they are the spontaneous utterance of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design. Ins. Co. v. Moseley, 8 Wall., 397; Commonwealth v. McPike, 3 Cush., 181; Railway v. Coyle, 55 Pa. St., 396; Elkins v. McKean, 79 Pa. St., 493; Monday v. The State, 32 Ga., 672; People v. Vernon, 35 Cal., 49; Little v. Commonwealth, 25 Va., 921; Haneman v. Stow, 57 Mo., 93. In most of the cases cited the declarations admitted were the relation of past occurrences. This line of decision has been followed in this court (Galveston v. Barbour, 62 Texas, 172), and in view of the great array of authority in support of that ruling we deem it best to adhere to it in this case. The declarations under consideration were made at the place of the accident and within a very few minutes after it occurred, and while the plaintiff was still writhing under the pain inflicted by it. We conclude that the testimony was properly admitted.

There was testimony to the effect that the brakemen on defendant's road were seen to put persons off the train and to keep them from getting on. The only other testimony bearing upon the question of the authority of the brakeman who was alleged to have put the plaintiff off the train was that of a conductor in the service of the defendant company, who testified that it was the duty of the company's conductors to eject trespassers from the train; that if they wished they could delegate this authority to the brakeman, but that without such delegation a brakeman had no authority to do so; some conductors enforced the rule in person and others through their brakemen. Such being the evidence upon this point, the court instructed the jury "that a railway company is not responsible for the willful trespass or unlawful acts of agents done clearly outside of the scope of their employment; but when a brakeman on a train undertakes to keep persons from getting on his train or to expel them, in the absence of proof to show that this was

outside of the scope of his duties, there would be no presumption that such was the fact."

The practical effect of this instruction was to induce the jury to believe that the burden was upon the defendant to show that the brakeman who ejected the plaintiff from the car was not acting within the scope of his authority. The burden was upon the plaintiff to prove the facts which would entitle him to recover. When a recovery is sought of the master for an injury inflicted by his servant, the plaintiff must show that the servant did the wrong while acting within the scope of his employment. It follows that, unless we can say that a brakeman has an implied authority to eject trespassers from the train upon which he is employed, the charge was error, for which the judgment must be reversed.

To hold the master liable for the act of his servant, it is not necessary that the servant should have authority to do the particular act. The act of the servant may be contrary to his express orders, and yet the master may be liable. But the act must be done within the scope of the general authority of the servant. It must be done in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed. For the mode in which the servant performs the duty he is engaged to perform, if wrongful and to the injury of another, the master is liable, although he may have expressly forbidden the particular act. But whether the act in question can be implied from the general authority conferred upon the servant must in general depend upon the nature of the service he is engaged to perform and the circumstances of the particular case. We know that as a general rule the conductor of a railway train has the general control and management of his train. His position has been likened to that of the master of a ship. It is necessary, as well for the protection of the interests of the company as for the security of the persons and property intrusted to his care, that he should have authority to eject trespassers from the cars under his control. Therefore it has been held in numerous cases that he has an implied authority to do this. Ramsden v. Railway, 104 Mass., 117; Schutz v. Railway, 89 N. Y., 242; Railway v. Duncan, 15 Am. and Eng. Ry. Cases, 422; Railway v. Toomay, 1 Am. and Eng. Ry. Cases, 461. It has also been held that a locomotive engineer has an implied authority to eject trespassers from his engine. Carter v. Railway, 8 Am. and Eng. Ry. Cases, 348; Same Case, 22 Am. and Eng. Ry. Cases, 360. So also, a railway company was held liable for the use of unnecessary force by a station agent in expelling a trespasser from a station house. Johnson v. Railway, 58 Iowa, 348. An engineer has the charge and control of his engine, and it is necessary for the safe performance of the important duties devolved upon him that he should have authority to remove persons trespassing upon it. So it may be the duty of a station master in charge of a station house

to eject persons not lawfully there, when their presence is detrimental to the interests, or forbidden by the rules, of the company.

But we fail to see that any necessity exists for conferring authority upon a brakeman to eject trespassers from the cars. The conductor has this power, and it is to be presumed power also to call to his aid the other servants of the company upon the train. The name brakeman would imply that it is the principal duty of that servant to attend to the brakes, and it is not to be inferred that he has control over the train or any particular car or set of cars. Accordingly we find it distinctly held that a brakeman has no implied authority to eject trespassers from the cars. Coal Co. v. Heeman, 86 Pa. St., 418. We have found no case which, when carefully analyzed, justifies a holding that a brakeman has such implied authority. We conclude that for the error in the charge quoted the judgment must be reversed.

We are of opinion that upon another trial the conversation had by the plaintiff with the brakeman before getting on the train should be excluded.

The other questions presented in the briefs need not arise upon another trial, and will not be considered.

The attention of counsel for the appellant is called to the fact that his brief does not comply with the rules. The assignments of error should not all be grouped together, but each should be presented separately, with its appropriate propositions and statements under it.

The judgment is reversed and the cause is remanded.