RECEIVERS OF INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY
v. J. E. ARMSTRONG.

No. 173.

1. **Contract for Drover's Pass.**—While provisions in stock freight contracts making it the duty of the shipper to feed, water, and care for his stock, and giving drover's pass for that purpose, will not relieve the carrier of its duty to the shipper as a passenger on such pass, nor from liability for neglect of duty in carrying the stock so shipped, still such contract does operate as a license to the shipper to look after his stock. In so doing he is liable for his negligence in the exercise of such work.

2. **Brakeman—Apparent Authority.**—It is not within the apparent authority of the brakeman on a railway train to control the movements of the train. Such control is exercised by the conductor.

3. **Same—Power of Brakeman.**—The plaintiff, travelling on a drover's pass, was injured while looking after his stock by the sudden backing of the train. He had been told by a brakeman to "look after his stock," and that the train would stop for awhile. It not appearing that the brakeman had any control of the train, and it not being within the scope of his apparent authority, the declarations made by the brakeman did not bind the railway company.

4. **Same.**—See facts held not to show authority in a brakeman to bind the railway company by his statements made to a passenger, upon which the passenger acted, and while so doing received injury.

5. **Care by Drover.**—If the drover had authority to look after his stock, he was entitled to care from the railway company for his safety while so employed. See facts showing the want of such care, had the license been binding upon the company.

6. **Railway—Conductor—Brakeman.**—The duties of a brakeman ordinarily do not extend to the control and management of the train; that power is lodged in the conductor.

7. **Authority of Agent—Brakeman.**—The burden rests upon plaintiff seeking to charge the principal for the acts of an agent, to prove the authority of the agent. It not being within the apparent authority of the brakeman to make the statements relied upon, it devolved upon plaintiff to establish such authority. See testimony held insufficient to prove such authority.

8. **Opinion Testimony.**—Upon the trial, it was one of the issues of fact, whether plaintiff had been guilty of contributory negligence in getting upon the drawhead, where he was injured. It was error to admit his opinion in evidence, that "he had to get up there" to give the necessary aid wanting to his stock.

9. **Care by Railway Company—Disposition of Cars in the Train.** A shipper can not complain of the acts of the railway company in placing the car or cars upon which is his stock. It was not negligence that the cars were not next to the caboose.

10. **Motive or Reason of Act of Party.**—It is competent testimony for a party testifying in his own behalf, when relevant to the issue, to testify to the motive or reason for his action which is under investigation.

APPEAL from Williamson. Tried below before Hon. W. M. KEY.

*Fisher & Townes*, for appellants.— 1. Under the contract declared on by him, appellee was not bound, and could not by law have been com-

pelled to perform any service for appellants, nor render any assistance to them or their employes in caring for or prodding up his stock en route. The contract did not make him an employe, but his status thereunder was that of a passenger for hire, and his proper position was in the caboose; and so long as he remained therein he had the right to demand and receive safe carriage as a passenger, and for any injury occurring to him while conducting himself in accordance with the law governing passengers, appellants were responsible to him in that capacity. But when he ceased to observe the rule applicable to him as a passenger, and voluntarily took upon himself to act as an employe, and to render service which only an employe was permitted or required to discharge, and in so doing abandoned a place of safety, in which his duty as a passenger required him to remain, and voluntarily placed himself in an extra hazardous position, he, by his conduct, for the time being, abandoned his status as a passenger, and waived those rights which pertained peculiarly to that status, and, pro hæc vice, made himself an employe, and consented that the rules of law by which the liability of appellants to him for injury occurring while he was actually rendering such service and was in such extra hazardous position, and which was directly and proximately occasioned thereby, should be those applicable to the relation of master and servant, and not those applicable between carrier and passenger. Patt. on Ry. Acc. Law, sec. 217; Player v. Railway, 12 Am. and Eng. Ry. Cases, 112; Sherman v. Railway, 4 Am. and Eng. Ry. Cases 590; for extensive discussion, see Everhard v. Railway, 4 Am. and Eng. Ry. Cases, 599.

2. The brakeman had no authority to invite appellee into a place of danger, nor to bind the appellants by his statement; and it was error to permit appellee to state what the brakeman told him to do. Sherman v. Railway, 4 Am. and Eng. Ry. Cases, 590; Everhard v. Railway, 4 Am. and Eng. Ry. Cases, 599; Player v. Railway, 12 Am. and Eng. Ry. Cases, 112.

3. The statements attributed to the brakeman did not constitute either invitation or license to appellee to assume the extra hazardous position on the drawheads, in which he had voluntarily and without solicitation placed himself when injured, and were irrelevant, and calculated to mislead the jury to appellants' prejudice.

4. Speculative and conjectural testimony, in which parties undertake to foretell what they would or would not have done under suppositious circumstances, which they state never existed, is to be rejected.

*J. W. Parker*, for appellee.—1. Appellee was a passenger for hire on the train, charged with the duty of caring for his stock, and whether the contract legally bound him to care for his stock or not, he having undertaken to do so, appellants can not excuse themselves for failure to use the diligence or care imposed upon them because of his performing such

duty, by showing that the contract was not binding on him. Railway v. Ivy, 71 Texas, 411; Railway v. Aiken, 71 Texas, 378, 379; Railway v. Garcia, 62 Texas, 288; Railway v. Lockwood, 17 Wall., 357.

2. Appellee assumed the position he was in when injured upon an implied, if not an express, representation that he might do so with safety; and whether he was guilty of negligence in so doing is a question of fact for the jury under the pleadings and evidence. Patt. Ry. Acc. Law, secs. 50, 275, 189, 168; Railway v. Davidson, 68 Texas, 373, 374; Railway v. Foreman, 73 Texas, 313; Railway v. Callahan, 12 S. W. Rep., 834.

3. The contract required appellee to care for his stock, and in doing so it was necessary, and known to be so to appellants, for him to get on all parts of the cars and on the drawheads thereof while working with his stock, and frequently to be in positions of great danger should the cars be suddenly moved; and it was therefore the duty of appellants to know that he was in a place of safety before moving the cars, and having failed in this regard they are liable. 2 Wood's Ry. Law, sec. 301.

4. The relation between appellants and appellee was that of carrier and passenger, and appellants could not contract away the duties they owed appellee growing out of that relation. If appellee, as a passenger, abandoned a place of safety and undertook to perform the duty of a servant, it was because appellants exacted it of him in the contract. The provision of the contract requiring appellee to care for his stock will certainly be construed to be of as high dignity as an invitation of a servant, and that the authorities are all to the effect that if a passenger assumes a position of danger at the invitation of a servant of the railway, and is injured, he can recover his damages of the railway. Again, appellants having required of appellee in the contract that he care for his stock, appellee had the right to suppose that he could with safety do those acts necessary to care for his stock, and appellants owed him the duty to see that he was not injured by any fault of theirs in performing them. And whether appellee's injury was caused by his own want of care, or whether it was caused by the negligence of appellants, were questions of fact which the verdict of the jury decided in appellee's favor. Again, appellee was the consignor of the stock, and being injured while personally assisting in caring for them, with the knowledge and consent and by the procurement of appellants, is entitled to recover. Patt. Ry. Acc. Law, sec. 229.

5. The statements made by the brakeman constituted both invitation and license to appellee to get out of the caboose and look after his stock, and to do whatever was usual and necessary to accomplish that object; and whether appellee used reasonable care or not was a question of fact for the jury, under all the circumstances of the case.

6. The statements of the brakeman were within the apparent scope of his general authority. Appellee did not know that this general authority

had been in any way limited. Appellants offered no evidence to show that it had, and appellee therefore very properly believed and acted upon the statements.

7. It was the duty of appellants to furnish a caboose equipped as cabooses ordinarily were, and such cabooses were provided with platforms at each end; and while it was not the duty of appellants to place the car containing appellee's horses next to the caboose in the train, but when they did so, he was entitled to the advantage and safety which a caboose constructed in the usual way on appellants' road would afford him in working with his stock.

FISHER, Chief Justice.—Appellee was a passenger upon appellants' freight train, by virtue of a stock shipper's contract, wherein it was provided, that he should look after and feed and water his carload of horses en route from Taylor, Texas, to Memphis, Tennessee. While the train had stopped at Rockdale, in the night, he, in an effort to get up one of his horses that was down in the car, got upon the drawhead of the cars between the caboose and the car in front, in which his horses were confined, and when in such position the train was, without warning or signal, backed, and thereby caused his foot to become fastened between the deadwood and the drawhead of the cars and severely crushed. For the damages resulting from the injuries sustained he brings this suit, and upon trial verdict and judgment were in his favor.

The first assignment of error goes to the ruling of the court in overruling the demurrers addressed to the petition. No error was committed in this ruling, and we dismiss the question without discussion.

The fourth subdivision of the charge of the trial court instructs the jury, that "Under the contract of shipment, the plaintiff was a passenger on defendant's freight train on the occasion in question, having the right and privilege when said train was not moving of leaving the caboose (in which it was his duty to remain while the train was in motion), to see about and attend to his said carload of horses being transported on said train. Such right and privilege, however, did not relieve plaintiff from the duty of avoiding apparent danger and the exercise of care and caution to protect himself from injury. The law requires him to exercise such care while attending to said live stock as a man of ordinary prudence would have exercised under such circumstances."

Appellants contend that it was error to give this charge, for the reasons, substantially, that the provision in the contract of shipment requiring the appellee to feed and water and to generally look after his stock was void, and could not be enforced, as the duty in such case rested upon the carrier, and that it could not shift it by a contract to that effect; and that the appellee was under no obligation or duty to look after his stock, and when he did so, he attempted the exercise of a right not or-

dinarily given a passenger; and that the charge quoted permits him to exercise such a right, free of the risks and burdens he assumed as an employe by virtue of his conduct.

It is held, that provisions in contracts of this character, making it the duty of the shipper to feed and water and care for his stock, will not be given effect so as to relieve the carrier of its duty to the shipper as a passenger, travelling upon a drover's pass, and will not relieve the carrier from its negligence in failing to exercise the proper degree of care in the general exercise of its duty that it as a carrier owes to stock placed in its possession for transportation. Railway v. Lockwood, 17 Wall., 357; 48 Am. Rep., 10; Railway v. Ivy, 71 Texas, 414; Railway v. Smith, 16 S. W. Rep., 803.

The primary reason why a carrier can not in this respect shift its responsibility and duty is, that it is not just and reasonable in the eye of the law to permit it by contract to relieve itself from responsibility for the negligence of itself or servants, and to permit it by contract to shift a duty and responsibility that it as a common carrier owes to the shipper and to the preservation and care of the thing confided to its custody for shipment.

But do these rules of law necessarily result in denying the privilege to the shipper to look after his stock, when so agreed to by the carrier?· It is true, the carrier can not by contract relieve itself of this duty by placing its performance upon the shipper, nor can it by contract relieve itself of its duty to the shipper as a passenger when accompanying the shipment; but it may grant the privilege or license to the shipper to look after his stock, holding him liable for his negligence in the exercise of it. The shipper, in looking after his stock under such a grant of privilege or license from the carrier, does not lose his status as a passenger, and the duty of the carrier in the exercise of proper caution and care toward him still exists; and if the shipper, under such circumstances, exercises due care and caution, the carrier will be liable for the results of its negligence in inflicting injury upon him. But when exercising this privilege, granted by the carrier, the shipper fails in the exercise of proper care and caution, such consequences rest upon his shoulders, and the carrier is not responsible for injury received under such circumstances. The law does not deny the privilege of the shipper to look after his stock, if he so desires, under a license from the carrier, provided he does so in a prudent manner. What it does deny is the right of the carrier to contract away its duty in this respect. Granting the privilege to the shipper to look after his stock, and his doing so, is not necessarily the exercise of authority or the performance of an act that is in conflict with the duty of the carrier in that respect; doing this thing by the shipper does not relieve the carrier of its duty in the premises. If the shipper, in the exercise of that privilege, places himself in a position of peril and danger that does not

ordinarily exist to passengers generally in travelling upon freight trains, he assumes what extra risk may exist by reason of such acts; but performing the act that places him in such extra hazardous or dangerous position does not relieve the carrier from the exercise of proper care in its conduct towards him.

This reduces the questions to simply those of care, caution, and negligence, which are properly matters to be considered by the jury, and which are left to their determination by the charge quoted.

It appears that when the freight train upon which the appellee was injured arrived at Rockdale, one of the brakemen told him to " get up and look after his stock; that the train would be there some little time, and that they would wait for a train to pass," or words to that effect. The appellee, after this statement was made, went out of the caboose for the purpose of looking after his stock, which was in the car immediately in front of the caboose, and found one of his horses down in the end of the car next to the caboose; in order to get up the horse, he stood on the drawhead between the caboose and the car, and prodded the horse with a stick or pole, and while in such position, the train, within a few minutes after it had stopped, without signal, backed, and appellee's foot was caught and crushed between the drawhead and the deadwood of the cars.

The principal fact in the case upon which the appellee bases his right to recover, is the authority given him by the brakeman to look after his stock, claiming that such authority from the brakeman is binding upon his employers, the appellants, he being at the time one of their servants employed in operating the train. The appellee contends, that he placed himself in the position he occupied when injured—that is, upon the drawhead between the cars—by reason of the statement made to him by the brakeman authorizing him to look after his stock, and that the train would remain stationary for sometime, believing that the effect of such statement was an invitation to that extent, and that he could rely upon the servants of the appellants not moving the train without a timely warning to him; contending that the authority, coming from the appellants through the bakeman, to him to look after his stock, implied the right for him to assume any position on or about the car that was necessary for him to occupy in order to get up the horse that was down, although such position may have been one of extra hazard or danger, and the effect of such invitation coming from the brakeman was notice to appellants that he might assume such dangerous position in his effort to look after his horses, and they were guilty of negligence in moving the train before giving him timely notice of their purpose. It is not denied but that the position upon the drawhead between two cars of a moving train, or one likely to move at any moment, is one of danger. Such is virtually admitted by the appellee; for when he was asked the question, " Would you have put yourself in the position you did but for the state-

ment of the brakeman?" he replied, "I would not for the whole road;" thus recognizing the peril he assumed by reason of placing himself in that position, his excuse for so doing being the authority from the brakeman.

The evidence shows, that there was a conductor in charge of the train, and that he was not present when the statement was made by the brakeman and knew nothing of it, and that at the time he was towards the front of the train, and that he knew nothing of the matter until after the appellee was injured. It also appears, that when the brakeman made the statement he immediately left the caboose and went towards the front of the train, and that he nor any of the servants of the appellants engaged in operating the train knew of the position occupied by appellee until after he was injured. The moving of the train when appellee was standing on the drawhead was for the purpose of placing some cars upon the side track, which the conductor was ordered to place there. There is evidence tending to prove that it is usual and customary to stand upon the drawhead of the trains when still, in order to get up stock that are down in a car. The evidence also tends to show that when drovers engaged in working with their stock assume dangerous positions, they usually notify the operatives of such fact.

The only evidence in the record bearing upon the authority or want of authority of the brakeman to bind the appellants by the statement made to the appellee is the evidence of appellee, to the effect, that he "did not know that the appellants had denied to the brakeman the right to advise him about looking after his stock, and that brakemen had acted with a good deal of authority in what they have said and done when the conductor was absent on trips that he had made before."

This is a summary of the facts and issues in order to understand the reasons for our disposition of this appeal.

This brings us to the consideration of two questions:

1. Do the facts show authority in the brakeman to bind the appellants by the statement made and the invitation extended to the appellee?

2. If such authority exists, was the appellee justified in assuming a position of danger without informing some of the servants of the appellants of such fact?

The second question we will consider first.

If the brakeman had the authority to extend the invitation, it is properly a question of fact for the jury to determine the effect of the invitation and the reasonable implications arising therefrom. Having invited the appellee to look after his stock, and given him the right to be there for that purpose, and having told him that the train would not move, the carrier should have known that he might be there; and being there, the facts and circumstances might show that he was engaged in working with his stock in such a position that was dangerous if the train should move,

and comparatively safe if it remained stationary. Finding that the invitation was extended by the carrier to the shipper to look after his stock, and that he was there for that purpose, and that it was usual and customary for the shipper to assume a position in accomplishing such purpose that was free from danger so long as the train was stationary, but became dangerous when moved, the duty would fairly be chargeable to the carrier of seeing that the shipper was not in danger, or refrain from doing any act that would increase his danger that from the facts and circumstances they might know would exist if the train was moved. From the fact of the invitation, knowing that the shipper might be looking after his stock, and knowing that shippers usually may occupy positions of danger if the train was moved, the jury would be justified in inferring that the carrier was guilty of negligence in moving the train without proper and timely warning to the shipper of its purpose to do so, giving the shipper an opportunity to escape a danger that arose after he assumed such position. The position was not necessarily dangerous so long as the train remained standing, and the shipper was there by reason of a statement that the train would not move, but only became dangerous when it was moved. Orcutt v. Railway, 45 Minn., 369; Olson v. Railway, 45 Minn., 537.

We can not say that the fact that none of the servants of appellants actually knew of the purpose of the appellee to put himself in a position of danger, or that he was in such position, would excuse it in moving the train, because the jury may have from the facts and circumstances inferred that such knowledge existed.

There is less difficulty in disposing of the first question than the one just discussed. As said before, this is the principal question in the case, because appellee's right to be upon the drawhead—thus in a position of danger—and his right to recover is bottomed upon the authority of the brakeman to invite him to look after his stock, coupled with the statement that the train would not move for sometime. His own testimony shows that he assumed such position solely by reason of such statement.

If the brakeman had no authority to extend such invitation or to make such statement, the appellee could not rely upon it as justifying his conduct. In order to bind the master by the act or invitation of the servant, it must be by one who is invested with the apparent power to do the act or extend the invitation, and this must be while the servant is engaged in the performance of his duties.

This train was in charge of a conductor, whose duties are well known, and who was the representative of the company in the movements and management of the train. The passenger dealing with him could safely rely upon his authority to bind the master by statement made when in the performance of his duties concerning the movements and management of the train. The nature of the employment vests the conductor

with the apparent authority to represent his principal in the movement and management of his train in his conduct and dealing with a passenger. One dealing with the conductor under such circumstances can safely rely that the authority in fact rests in whom it is apparently lodged.

The policy of the law is, that in the operation of trains there should be one in authority who shall control and manage the train; this is justly lodged in the conductor, who stands as the representative of the carrier in the operation and control of the train and in the performance of its duty to the shipper or passenger. Railway v. Anderson, 82 Texas, 520; Woods' Ry. Law, sec. 316. The agent's power must stand upon either the express or implied authority conferred upon him by his principal. An agent can not increase his power by his own act, and a principal is not liable for the acts of the agent beyond the sphere of his duty.

This leads us to inquire, What authority or control has a brakeman over the management or movements of a train when it is in charge of a conductor? What apparent power is lodged in him, when the very fact that a conductor is in charge of the train conveys the information that the representative of the master in the management and control of the train is some one other than the brakeman?

The duties of the brakeman are ordinarily as well known as those of the conductor. Railway v. Anderson, 82 Texas, 520; Fabrer v. Railway, 22 S. W. Rep., 633. His duties ordinarily do not extend to the control and management of the train, but that power is lodged, as before said, in the conductor. The power to grant a license to the passenger or to control the train is not within the apparent scope of his powers as a brakeman. The nature of his office does not imply that he is authorized to give directions on this subject that will bind the company. In order for the act of the agent to bind the principal, the act done must pertain to the particular duties of that employment; and the employment for a particular purpose gives only the authority necessary for that agency under ordinary circumstances, or the authority usually exercised by similar agents. Under such circumstances as these, when it is undertaken to extend the authority of the agent beyond the exercise of power ordinarily vested in him and beyond the apparent power that is implied by reason of his employment, the burden rests upon him who seeks to charge the principal to prove the existence of the authority in such agent. Railway v. Anderson, 82 Texas, 517; Fabrer v. Railway, 22 S. W. Rep., 634.

The extent of the evidence in this case simply shows, that in former trips made by the appellee, brakemen, in the absence of the conductor, "generally acted with a good deal of authority in what they said and done." It is not shown what power they generally exercised in this respect within the knowledge of their principals, nor is the authority of this particular brakeman shown, nor does it appear that the duties of brakemen generally extend to the authority exercised by the brakeman

in this case. His authority must be proven; we can not infer it from the meager evidence before us. There is no pretense in this case that the conductor was aware of the misconduct of the brakeman; but, upon the contrary, the inference is fair from the evidence that he knew nothing of it until after the accident.

In Sherman v. Railway, 37 American Reports (72 Missouri), 423, an infant, who was held to be a passenger upon a freight train, was invited by the brakeman to a ride upon the train, but if he did so he must assist in operating the brakes. The brakeman instructed him while the train was moving to adjust some boards on a car, and while so doing he was injured. Held, that the company was not liable, and that the brakeman exceeded his authority.

In Railway v. Miles, 48 American Reports, 10 (40 Arkansas, 298), a drover who was a passenger was instructed by a station agent to ride on top of a cattle car, and was injured. Held, that the station agent did not have the authority to confer the privilege.

Other cases in point could be quoted, but we are contented in citing the following additional authorities that support the principles announced: 2 Woods' Ry. Law, sec. 316; Fabrer v. Railway, 22 S. W. Rep., 633, and cases cited; Railway v. Anderson, 82 Texas, 519.

From what has been said, we think the court erred in admitting evidence as to the statement of the brakeman, and in submitting to the jury, by its charge, as an issue in the case the authority of the brakeman.

Upon the trial the plaintiff was asked if he could have gotten the horse up in any other way than by standing upon the drawhead, and he answered: "I had to get up there to reach the other horses that were standing over the one that was down, and I could not get up the one down while they were over him."

This question and answer was objected to, because it was an attempt to elicit the opinion of the witness as to a matter which the jury was authorized to determine only from the facts. One of the issues in the case was, whether the appellee was guilty of contributory negligence in getting upon the drawhead, and it was also contended that the horse could have been gotten up without the necessity of appellee placing himself in such position.

These were facts to be passed upon by the jury, from the facts and circumstances showing the position or situation of the car and the horses in it. As to the ability of the appellee to get up a horse in the car that was down, it was properly a matter of fact, and not for the opinion of the witness. It was error to admit the evidence.

Under the peculiar facts of this case, wherein it is claimed by the appellee that the appellants were guilty of negligence in not having at the rear of its train at the time of the accident some employe, who, if being there, could have prevented the injury to appellee, or lessened its sever-

ity, the court should have given a charge embodying the principle stated in special charge number 4, asked by the appellants. It was error not to do so when requested.

There is no issue in the case raised by the pleadings charging negligence for failure to furnish a caboose with a platform; consequently, it was error to permit the appellee to testify what he could have done if the caboose had been furnished with a platform. If such an issue had been made, we do not see how the appellee could have complained of the failure to furnish a caboose with a platform as an act of negligence, because the carrier rested under no duty to place his car of horses next to the caboose; they could have been placed in any other part of the train. If he found his horses next to the caboose that did not have a platform, he must accept the situation as he finds it, and he can not justify his position of peril or danger which he voluntarily assumed by saying, that "if you had done something that your duty did not require of you, I could have without injury performed that which I voluntarily attempted."

Upon the trial, over the objection of the appellant, the plaintiff was permitted to testify, " that but for the statement of the brakeman he would not have placed himself in the position he was when injured for the whole road; that in so doing he expected the train to stand still." The first objection is, that the evidence fails to show authority in the brakeman to make the statement he did.

We think this objection well taken, and for this reason hold the evidence inadmissible. But in view of another trial, we will notice the second objection urged to the testimony, which is to the effect that the evidence is speculative and conjectural, and permits the witness to give the reason for his act and the motive that influenced him in its performance.

If the authority of the brakeman to make the statement had been shown, we think the second objection to the evidence would be without merit. Under the strict rule of the common law, when parties were incompetent as witnesses in their own behalf, the reason or motive that influenced the performance of an act was to be gathered from the surrounding circumstances or the declarations explanatory of the act that would fall within the rule of res gestæ. But in those jurisdictions where the common law rule of exclusion on account of interest has ceased to exist, and parties are permitted to testify, the courts have almost uniformly held, that when the physical act is the subject of inquiry, and the rights of the parties may depend upon the motive or reason that influenced the act, it is admissible, to show such motive or reason that actuated its performance. The reason given may not be binding upon the court or jury, and they may disregard it as impossible or not true, in reaching a result. They can weigh it like other evidence in the case. The question of

motive or reason that influenced the party in the performance of the act is a fact; and why may not a party who is permitted to testify as to the facts showing his acts and conduct, be permitted to testify as to his reason or motive that influenced the act, when this becomes a material inquiry in the case? If it is a fact that he knows, why should he not be permitted to testify to it, as well as the physical fact or act itself?

The fact that this character of evidence is conceived and concealed in the mind of the declarant, and that human skill has furnished no reliable method of disproving it, other than may be gathered from the facts and circumstances, furnishes no just ground for its exclusion. This fact may affect its weight, but not its competency. Hamburg v. Wood, 66 Texas, 176; 1 Thomp. on Trials, sec. 383; 1 Whart on Ev., secs. 482, 508.

For the errors discussed, the judgment will be reversed and the cause remanded.

　　　　　　　　　　　　　　　　　· *Reversed and remanded.*

Delivered September 20, 1893.

Associate Justice KEY did not sit in this case.

Motion for rehearing refused.