**TRUCK INSURANCE EXCHANGE et al.,**
Appellants,

v.

**R. Lester BALLARD et al., Appellees.**

No. 10815.

Court of Civil Appeals of Texas.

Austin.

Feb. 22, 1961.

Rehearing Denied March 15, 1961.

Gay & Meyers, Austin, for appellant.

Johnnie B. Rogers, Austin, Silverstein, Warshafsky & Rotter, Milwaukee, Wis., Byrd & Davis, Austin, for appellee.

GRAY, Justice.

Appellant, Truck Insurance Exchange, has appealed from a judgment adjudging it liable for damages sustained by Lorraine Williams and her husband Harry Williams

as the result of a collision between the Williams' automobile and one driven by appellee, R. Lester Ballard. Appellant's liability is asserted under the terms of a policy of insurance issued by it to appellee's employer, Jessie James Smith Service Center, later referred to as the Center.

The liability of appellees for the damages sustained has been determined in another proceeding and we are not here concerned with that question.

The Center is a partnership composed of Earlton Smith and his mother, Mrs. Margaret B. Smith, and is engaged in the garage business and also in the business of selling new and used cars. Earlton Smith was manager of the business. Appellee was employed by the Center as an automobile salesman and began work on the morning of January 1, 1958. On that day he drove a used car from the lot of the Center and while driving the said car he collided with the Williams' car and damages to the Williamses resulted.

Appellant's liability is asserted under its policy of insurance providing:

"The unqualified word 'insured' includes the named insured and also includes (1) any partner, employee, director or stockholder thereof while acting within the scope of his duties as such, and any person or organization having a financial interest in the business of the named insured covered by this endorsement, and (2) any person while using an automobile covered by this endorsement, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * *"

It is undisputed that appellee was employed by the Center as an automobile salesman to sell new and used cars; that he first reported for work on the morning of January 1, 1958, and that at about one o'clock p. m. on that day he took a used car from the lot of the Center and while

driving it he had the collision supra. It is also undisputed that at the time there was more than one used car belonging to the Center on the lot and that the car appellee took had the ignition keys in it at the time. Appellee had not been given permission to take used cars from the lot neither had he been denied such permission. It appears that the exact question had not, prior to that time, been discussed.

At the time appellee took the used car Earlton Smith was not present at the Center. Appellee testified that when he took the car he said to Earlton Smith's teenage son, who worked at the Center on holidays and Saturdays, that he was going to drive the car to see how it ran and that he would eat his lunch before he came back and that the boy replied "O.K." or something to that effect. We do not however understand the parties to make any issue as to whether the boy's reply constituted permission for appellee to take the car.

Appellee testified that he had a prospective purchaser for a used car of the kind he took from the lot; that he took the car for the purpose of testing its suitability for sale and to familiarize himself with it, and said he was going to drive the car to his home to get his lunch. He also said that he had been a car salesman in Austin for a number of years, was experienced in the sale of used cars and that it was necessary for a used car salesman to drive a used car a few blocks to get the feel of it in order to enable him to answer questions propounded by customers whom he said must be told the truth about the car in order to build their confidence in the salesman. He also said this was the customary practice of used car salesmen. His testimony in this respect was applied to used cars rather than to new ones. Appellee was corroborated by the testimony of a car salesman of twelve years experience, three of which years he had been sales manager for motor companies selling new and used cars.

Earlton Smith testified that he had instructed appellee to stay with any car he

was demonstrating because he did not approve of turning a car over to a prospective purchaser for them to use. He testified:

"Q. I would ask you this: That as long as Mr. Ballard was engaged in your business, in the use of an automobile, that was perfectly all right with you? A. That covers slightly more than the permission I gave. I thought I had made it clear a few moments ago, when I said that I had given him permission to demonstrate a car to any prospect—

"Q. Yes, sir. A. —and that I had instructed him to stay with the car and not turn over any car to a prospect by itself without staying with the car.

"Q. All right, sir. I will say this, that in keeping with the instructions that you did give him— A. Yes, sir.

"Q. —if his use of an automobile was in the furtherance of your business and in the furtherance of your interests, certainly— A. Certainly—

"Q. —you had no objection to it? A. That is correct."

Appellee said he did not ask anyone for permission to take the car and Earlton Smith said that he did not give appellee permission to take used cars from the lot "without any prospect in the car at the time." After the collision appellee was told by Earlton Smith that he was not to drive the used cars as he wanted to. The collision occurred on the first day that appellee worked for the Center for which reason there was no previous course of dealing between the parties.

In answer to three special issues the jury found: (1) that at the time in question appellee "was acting within the scope of his employment with" the Center; (2) that on the occasion in question appellee was driving the car with his employer's permission, either express or implied, and (3) that on the occasion in question appellee was using the car in the automobile business. In con-

nection with issues (1) and (3) the trial court instructed the jury that:

"By the term 'acting within the scope of his employment,' as used in this charge, is meant acts of every kind and character having to do with and originating in the work, business or trades of the employer, done by an employee while engaged in or about the furtherance of the affairs of the business of the employer, whether upon the employer's premises or elsewhere, and which act is done for the accomplishment of the object for which he is employed."

"You are further instructed that an employee may by acting within the scope of his employment, although he is at the same time serving some purpose of his own."

"By the term 'automobile business' as used in Special Issue No. 3 is meant the business or occupation of selling, repairing, servicing, storing or parking automobiles and all operations incident thereto."

Appellant made a motion for judgment non obstante veredicto which was overruled and the judgment here complained of was rendered.

Appellant's first point is to the effect that the trial court erred in holding that there was evidence that at the time of the collision appellee was driving the car with his employer's permission, either express or implied.

Appellee was asked and testified:

"Q. As I understand it, then, as part of your job, you were promised that you would be furnished transportation? A. Yes, sir.

"Q. What do you mean in the automobile business as a salesman, that you would be furnished transporation; what does that mean to you? A. Well, to do your daily getting around and following up on prospects, and hunting

prospects, and to get back and forth home from work, and most anything in my line of work that would be necessary for me to have an automobile to drive.

"Q. On the other jobs you have had, have your employers furnished you transportation? A. Yes, sir, every one of them."

At this point it is proper to notice that the collision occurred while appellee was driving toward, and before he reached, his home. Also that appellee's employer was in the automobile business selling new and used cars and employed appellee as an automobile salesman.

While we think appellee's evidence above quoted is some evidence of the employer's permission to drive the car as a means of transportation we also think that the evidence as stated supra is evidence that appellee had implied permission as a used car salesman to drive the car to test it in order to be able to recommend it to a prospective purchaser. Earlton Smith testified:

"Q. In other words, the man was hired there as a salesman, and as long as he was using the car as a salesman, why, that was perfectly all right with you? A. That is correct."

■ As will be shown by cases later cited the fact that appellee was on a trip for a twofold purpose: testing the car in his capacity as a salesman and also going home to lunch, would not be fatal to appellee's contention. The evidence is sufficient to sustain a finding that appellee was driving the car in furtherance of the business of the Center in selling used cars and there is evidence to support the jury's finding of implied permission. Appellant's point one is overruled.

Appellant's point two is that the trial court erred:

" * * * in holding that there was evidence that at the time of the colli-

sion appellee Ballard was either 'acting' within the scope of his duties as such' or was 'acting within the scope of his employment.' "

In International & G. N. Ry. Co. v. Anderson, 82 Tex. 516, 17 S.W. 1039, 1040,. the court said:

"To hold the master liable for the act of his servant, it is not necessary that the servant should have authority to do the particular act. The act of the servant may be contrary of his express orders, and yet the master may be liable. But the act must be done within the scope of the general authority of the servant. It must be done in furtherance of the master's business,. and for the accomplishment of the object for which the servant is employed. For the mode in which the servant performs the duty he is engaged to perform, if wrongful, and to the injury of another, the master is liable, although he may have expressly forbidden the particular act. But whether the act in question can be implied from the general authority conferred upon the servant must, in general, depend upon the nature of the service he is engaged to perform, and the circumstances of the particular case."

The above quotation is approved in J. C. Penney Co. v. Oberpriller, 141 Tex. 128,. 170 S.W.2d 607.

Under the evidence before us appellee drove the car for the purpose of. enabling him to discharge his duty as a salesman, to acquaint himself with the used car in order to better represent his employer in the matter of a sale of that car. To this extent such driving was for the purpose of "the accomplishment of the object for which the servant was employed"—the sale of used cars or more specific of that car. This being true then the fact that he joined with such purpose some private business (going to lunch) would be immaterial. Pierce-Fordice Oil Ass'n v. Brading, Tex.Civ.App., 212 S.W. 707. The rule applicable is stated

in Galveston, H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S.W. 1073, 1074, 10 L.R.A., N.S., 367, to be:

"It is in cases of the character supposed, where there has been a mingling of personal motive or purpose of the servant with the doing of his work for his employer, that much of the difficulty and conflict of opinion have arisen in determining whether or not the wrong committed should be ascribed to the master or be regarded as the personal tort of the servant alone. It is now settled, in this state at least, that the presence of such a motive or purpose in the servant's mind does not affect the master's liability, where that which the servant does is in the line of his duty, and in the prosecution of the master's work. But, when he goes entirely aside from his work, and engages in the doing of an act not in furtherance of the master's business, but to accomplish some purpose of his own, there is no principle which charges the master with responsibility for such actions."

■ In the case before us there was not a complete turning aside from the master's work but rather a joinder of that work with a personal mission. Under the authorities supra appellee at the time of the collision was acting within the scope of his duties as an employee of the Center, and "within the scope of his employment" as such employee.

Appellant's third point complains that the trial court erred in submitting issue one inquiring if appellee was acting within the scope of his employment instead of within the scope of his duties.

■ While we agree that generally an issue should be submitted in the terms of the contract yet in the case before us we think that appellant did not suffer harm by the submission. The authorities supra use the terms "duties" and "employment" interchangeably. In our quotation from In-ternational & G. N. Ry. Co. v. Anderson, supra the court said [82 Tex. 516, 17 S.W. 1040]: "For the mode in which the servant performs the duty he is engaged to perform."

In Sid Katz, Inc. v. Walsh & Burney, 142 Tex. 232, 177 S.W.2d 49, 51, the court referred to the testimony of the witness Staats and stated that he said it was his duty to find the trouble and to correct it and that it was his duty to close the valve. The court then said: "The mere fact that he violated instructions in doing the act complained of cannot operate to take the act out of the course of his employment." The same is true as to the testimony of the witness Tidwell and the language of the court in Guitar v. Wheeler, Tex.Civ.App., 36 S.W.2d 325, Er. dism. In construing the wording of the policy of insurance its terms are to be given their plain, ordinary and popular meaning. 24–B Tex.Jur. p. 97, Sec. 29. To give the term "within the scope of his duties" a narrower and more strict meaning than is given to the term "within the scope of his employment" would be a strained and technical rather than a reasonable construction. This should not be done. 24–B Tex.Jur. p. 95, Sec. 28.

Appellant contends that the policy provisions use the word "duties" as referring only to tasks assigned to the employee by the employer. We do not agree. This would be an unreasonable construction since it is the duty of the employee to act in furtherance of the employer's business and for the accomplishment of the purpose for which the employee is employed. The authorities supra do not confine the servant to performing his task in an assigned manner.

■ Points four, five and six are briefed together. We will so consider them. Point four complains that the definition given in connection with issue one

"* * * permits the jury to give an affirmative answer to said Special Issue if, in its own judgment, the act

being done by the employee was in the furtherance of the employer's business, and denies to the employer the right to define the duties of his employees and to state what acts he wishes the employee to perform."

The fifth point is that the trial court erred in overruling its exception to the definition of "acting within the scope of his employment" because:

"It permits the jury to answer said Special Issue in the affirmative if the jury believes that the particular thing the employee was doing at the time was 'for the accomplishment of the object for which he is employed,' without regard to whether or not the employer wanted the employee to do such act and whether or not the employer would have permitted such act, and said definition as a whole makes the employer liable for any and all voluntary acts of R. Lester Ballard which the jury may think would have furthered the business of the employer. * * *"

The sixth point complains of the said definition because

"It partakes more of a definition of the term 'course of employment' as used in the Workmen's Compensation Act, and * * * in particular * * * is objectionable * * * in using the expression 'having to do with and originating in the work, business or trade of the employer', such quoted language having reference only to the course of employment of an employee under the Workmen's Compensation Act."

It is undisputed that appellee was employed to sell cars, both new and used, and that the car he was driving on the occasion in question was possessed by the Center for sale. As we have said supra appellee was driving the car to gain information about it in order to be able to sell it—such sales being the very purpose for which he was employed. Even if it be said that he

employed a wrong manner in performing his duty, or did so without specific instructions, or even in contradiction to specific instructions, still the master would not be relieved of liability if he (appellee) was actually engaged in the general scope of his authority. Sears, Roebuck & Co. v. Jones, Tex.Civ.App., 303 S.W.2d 432, 438, Er. ref., n. r. e. The definitions given by the trial court were not subject to the objections directed by appellant against them.

Appellant's points seven and eight are that the trial court erred in refusing its requested instructions reading:

"By the term 'acting in the scope of his employment' as used in this charge is meant 'acts of every kind and character done by an employee while he is engaged in performing the duties for which he was employed for the benefit of his employer or such acts as his employer may reasonably have contemplated would have been performed by him in the performance of such duties.' * * *"

"By the term 'acting in the scope of his employment' as used in this charge is meant acts of every kind and character done by an employee while engaged in performing the work directed by his employer for the benefit of his employer.'"

In its brief appellant says that "the controlling issue was 'scope of his duties.'"

The definition of "acting within the scope of his employment" as given by the trial court meant acts "done by an employee while engaged in or about the furtherance of the affairs of the business of the employer. The requested instruction limited the acts of the employee to those done "while he is engaged in performing the duties for which he was employed for the benefit of his employer." Except for the use of the word "duties" there is not substantial difference in the two definitions. Supra we have shown that the meaning of the word "duty" as applied in cases of this

character is technical rather than legal and that the words "duties" and "employment" are often used interchangeably in the authorities. We think the definition given by the trial court is correct under the authorities from which we have quoted and that reversible error is not presented by point seven.

■ The requested instruction quoted under point eight limits the acts of the employee to those done "while engaged in the performance of the work directed." This would be a restriction on the acts of the employee for which the employer is liable and require the employee to have authority to do the particular act. This is not the applicable test. International & G. N. Ry. Co. v. Anderson, supra.

Points nine and ten complain that the jury's answers to issues two and one are contrary to the overwhelming preponderance of the evidence.

■ These points present a question of fact and require us to consider all of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. Supra we have referred to and discussed the evidence presented by appellant and by appellee as to the employment of appellee to sell used cars for the Center, the business engaged in by the Center, the purpose of appellee in taking the car belonging to the Center and which was in collision with the Williams' car together with the evidence opposing and tending to show permission for appellee to test the car and that the collision occurred while appellee was driving the car for the purposes shown. We have also shown, by quotes from authorities, that the employer is liable even though the employee did not have authority to do the particular act that resulted in injury, and even though the act was contrary to express orders provided that the act was done in furtherance of the employer's business and was done for the accomplishment of the object for which the employee is employed. Our consideration of all of the evidence convinces us that the answers of the jury are not so against the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

Appellant's points do not present reversible error and the judgment of the trial court is affirmed.