## Coleman B. De Walt v. Houston East & West Texas Railway Company.

Decided January 25, 1900.

**1. Evidence—Res Gestae—Opinion.**

Declarations of an engineer made five to ten minutes after an accident, to the effect that it was the fault of the brakeman, and that if the brakeman had done his duty and signaled, the accident would not have happened, were properly excluded, as being matter of opinion rather than res gestae, and also because, under the facts shown, they appeared to be the result of premeditation rather than spontaneous statements.

**2. Same.**

The declaration of a brakeman made to a bystander within five minutes after an accident in coupling cars at which he was present, to the effect that he knew the injured party had been at work on the car there, but thought he had gone away, is res gestae.

**3. Same.**

Where a statement is res gestae, it does not affect its admissibility that it might have been used to impeach the testimony of the person who made it, but was properly excluded, as to that matter, because the necessary predicate had not been laid therefor.

**4. Same—Deposition—Answer Sufficiently Responsive.**

Where, in answer to the seventy-third cross-interrogatory, "Is it not true that you could not open the throttle of this large engine as quickly as the old locomotive without giving a sudden jerk to the whole train?" the witness replied, "Yes, easier without sudden jerk," this was held not evasive and sufficiently responsive.

**5. Same—Opinion—Negligence.**

Statements by witnesses who are trainmen that the train was being made up and handled in the usual and customary way at the time the accident occurred, are not objectionable as being matters of opinion, but it is not admissible for them to testify that it was being made up in a "careful and cautious manner."

**6. Same—Proof of Drinking Habits Immaterial.**

In an action by a railway employe for personal injuries it was error, where there was no evidence that he was under the influence of liquor when injured, to admit evidence that he took an occasional drink, and two months previously had been lectured therefor by his foreman.

**7. Same—Evidence of Authority—Negligence.**

Where, in such an action, plaintiff, who worked for the company under the direction of its depot agent, was hurt while working on a car standing on the main track, evidence that the agent had no authority over cars not on the side track, and that the conductor had full control of them when on the main line, was relevant, under the facts in this case, on the question of the conductor's negligence towards plaintiff, and of contributory negligence on his part.

**8. Railway Company—Employe Not a Trespasser—Negligence.**

Where plaintiff, who was employed under the station agent to help about the depot and side tracks, went upon the main line to seal a car, upon the conductor's demand of the agent that it be sealed, he was not a trespasser, and an instruction that he was not entitled to recover unless those in charge of the train knew of his presence and danger in time to have prevented the injury, was erroneous.

**9. Same—Charge of Court—Negligence.**

The charge should, in such case, have left it to the jury to determine from all the evidence whether plaintiff was negligent in going upon the track without notifying the conductor and trainmen, and whether they were negligent in supposing he had finished his work there and gone away before moving the cars.

**10. Same—Public Crossing—Ringing Bell.**

It was not error for the court to refuse to charge upon the duty of the engineer to ring the bell at a public crossing where, although plaintiff was injured by a moving engine at and near such a crossing, he was there solely in the capacity of a railway employe.

APPEAL from Polk.    Tried below before Hon. L. B. HIGHTOWER.

*Hill & Hill* and *O. E. Oates,* for appellant.

*Baker, Botts, Baker & Lovett, O. S. Parker,* and *J. C. Feagin,* for appellees.

GILL, ASSOCIATE JUSTICE.—This suit was brought by appellant, Coleman B. DeWalt, against appellee, the Houston East & West Texas Railway Company, to recover damages for personal injuries alleged to have been the result of the negligence of the employes of appellee in the handling of a freight train at the town of Livingston, Texas.    From a verdict and judgment for appellee De Walt has appealed.

Appellant alleged that he was in the employ of appellee as a porter at Livingston, and was subject to the orders and directions of J. E. Burton, appellee's station agent and operator at that point.    That, as porter, it was appellant's duty to deliver telegrams, load, close, seal, and cleat cars, and do any other necessary thing about the station which Burton might direct him to do.    That on the occasion in question, by the order of Burton and in the discharge of his usual duties, he undertook to seal and cleat a loaded freight car of appellee.    That while standing between two freight cars cleating the window, appellee's employes in charge of a freight train carelessly and without warning to him propelled an engine and cars against the car on which he was standing, thereby knocking him down between the cars, crushing his foot and leg so that amputation was rendered necessary.

Appellee answered by general denial, plea of contributory negligence, and the further allegation that the injury occurred on the main track, and that Burton had no authority to send De Walt upon the cars when on the main track, as the cars were then in the exclusive control of the conductor of the train.

Plaintiff's evidence tended to show that the injury occurred in the following manner:    Freight cars No. 62 and 68 were standing on the siding next to a cotton platform where De Walt and one Andress had just loaded them with cotton.    Car No. 62 had been sealed and cleated. De Walt went across to the depot to get the sealing irons to seal and cleat No. 68, when Burton directed him to deliver a telegram somewhere in the town.    While De Walt was away on this errand the freight train which was to take out these cars came in, and he hastened back to the station.    Here he met Burton and one Karr, the conductor of the train.    Burton had the sealing iron in his hand, and asked De Walt why he had not closed and cleated the car.    De Walt replied that he

had just returned from the delivery of the telegram. He then took the sealing iron from Burton and went to seal and cleat the car. At this time the car had been placed upon the main track but had not been incorporated in the train. The conductor saw De Walt take the sealing iron and start toward the car. Appellant found one end window already cleated and a door on the side already sealed. He went to a platform near by to get cleats, nails, and hammer, and returned to the car to perform his task. A car is sealed by closing the door, fastening the hasp over the staple, passing a wire through the hasp and staple, and sealing the ends of the wire together by means of a small piece of lead and the use of the sealing iron. The windows are sealed in the same way. The windows are cleated by closing them and nailing on a small strip of wood so as to exclude dust and sparks. There is a window in each end of the car. It was a part of the duty of appellant to seal and cleat cars, and it was not proper for the conductor to take a car out nor for the station agent to permit a car to go out until sealed and cleated. While appellant was in between the cars cleating the window (in doing which he had to stand on the deadwood above the drawhead) the employes in charge of the train negligently and without warning to appellant backed the engine and train against the cars, between which he was standing, without his knowledge, whereby he was injured as alleged. He was doing the work in the usual way, and knowing the conductor and trainmen and Burton were aware of his presence and danger, relied on them to warn him and protect him, which they failed to do.

It was shown by both Karr and Burton that Karr, after discovering that the car had not been sealed and cleated, complained to Burton about it, and that Karr was present when appellant started off with the sealing irons to seal and cleat the car. Both these witnesses state, however, that the car at this time was upon the siding. That while on the siding it was in the control of Burton, and when moved on to the main track it was in the exclusive control of Karr. Karr, the conductor, also testified that he saw De Walt at the car while on the siding, but saw him leave it and supposed he had finished his work, and on this supposition had the car moved on to the main track for the purpose of incorporating it in the train. All the trainmen denied knowledge of the presence of De Walt between the cars at the time of the accident, though the brakeman Poindexter stated that he had seen him about the car a few minutes before on the side track, but thought he had gone away. This witness also stated that he was head brakeman, charged with the duty of coupling the car next the engine to the car on which De Walt was standing, and that he started to couple the cars when De Walt fell, and came near falling on him. That he had not seen him standing there until he started to fall. The evidence is conflicting also as to whether the bell was ringing when the engine approached the car on which De Walt was standing. The conductor at the time of and just prior to the accident was standing on top of the

car nearest to and attached to the engine, and was manipulating the brake.

Burton returned to his office in the depot as soon as De Walt took the sealing irons and started toward the car. He remained in the depot until he heard of the accident. The engineer left his engine and went to where De Walt was lying after he fell, but returned in a short time to his position on his engine.

The evidence is voluminous, and the brief statement above given will, we believe, sufficiently indicate the issues raised and the nature of the case for the purposes of this opinion.

Appellant in his first assignment of error complains of the exclusion of the testimony of his witness Sisson as to declarations of the engineer McBride made between five and ten minutes after the accident. This witness stated that he was about one block (214 feet) away when the accident occurred. That immediately upon hearing of it he went at once to the scene, reaching there between five and ten minutes after it occurred. That De Walt was then lying on the ground near where he fell, and about two car lengths from the engine. That being well acquainted with engineer McBride, he got up in the engine cab where McBride then was, and asked him how it happened. McBride replied, "The trouble was from the careless negro brakeman. That no reliance could be placed in the damned negro brakemen on the road. That if the brakeman had done his duty and signaled, it would not have happened." This answer of McBride was offered by appellant, and was excluded on objection by defendant that it was not part of the res gestae, and that McBride was not shown to have authority to bind defendant by his admissions. That the latter objection was sound is too clear for argument. Whether or not it was admissible as part of the res gestae is a question of greater difficulty. We are not inclined to enter into an extended discussion of the reasons which have been held to underlie the rules governing the admission of declarations as res gestae. The authorities have been frequently reviewed by our own courts, and the general rules applicable to the question are well settled in this State. The difficulty is in their application. In Railway v. Anderson, 82 Texas, 519, the general rule is stated to be that all declarations or exclamations uttered by the parties to a transaction and which are contemporaneous with and accompanying it and are calculated to throw light upon the motives and intentions of the parties to it, are clearly admissible as part of the res gestae. It is further said that respectable authority may be found which restricts the rule to this definition, but the rule is declared to be more liberal in this State, and is thus stated: "Not only are such declarations admissible as accompany the transaction, but also such as are made under such circumstances as will raise a reasonable presumption that they are the spontaneous utterances of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design." In the case quoted

the declarations of an injured person as to the cause of his injuries were held admissible, though made to a person who heard his outcries, got up and dressed, and went to where he was lying and suffering from his injuries. Among the cases cited in support of this rule is Railway v. Coyle, 55 Pennsylvania State, 396, where it was held that the declaration of the engineer at the point where the goods of a peddler had been scattered along the track as a result of collision with his engine, and a few minutes after the collision, was admissible as part of the res gestae as tending to explain the cause and character of the accident. This decision is by no means satisfactory, as the rule is stated in its restricted sense, but the evidence was admitted notwithstanding the declaration was not contemporaneous with the accident. Some authorities declare that such declarations are admitted, not as tending to prove the truth of the thing declared, but as a fact in itself, a part of the occurrence. This seems to the writer to be inconsistent with the reason of the rule as declared to exist in this State. Why require the proffered declaration to be in the nature of evidence and to be free from the presumption of premeditation and design, if it shall not be received to establish the truth of the thing declared? The true reason for the admission of declarations made subsequent to the occurrence to which it relates, would seem to be that, being shown to be an utterance instinctively made as the result of impulses produced by the occurrence to which it related, and under circumstances showing it not to be the result of premeditation or design, it is clothed with a reliability which would render it safe to receive it as original evidence, without requiring the oath of the declarant in support of its truth.

The case of Railway v. Anderson, supra, has been widely cited in this State, and the admissibility of the proffered evidence must be tested by the rule as there declared. Measured by that test, we think the evidence was properly excluded, not by reason of the time shown to have elapsed between the accident and the making of the declaration, but because, in our opinion, it is lacking in other qualities necessary for its admission, in any event. Much of the declaration must, in the nature of things, be held to be pure opinion as to the reliability of negro brakemen generally. It also charges the brakeman in question with want of care, and the only *fact* he undertakes to declare must be inferred from his statement that if the brakeman had signaled it would not have happened. Not every declaration is admissible, however closely connected it may be with the main fact. The declaration must be of such a nature as to tend to throw light on the transaction. The opinion of the engineer would be no more admissible in the form of a declaration than as original evidence offered under the sanction of an oath. He should certainly be placed in a position to be able to know the fact he undertakes to declare. Railway v. Finley, 11 Texas Civ. App., 71.

Another objection equally grave is that it was disclosed by other evidence that the engineer, after the accident, had left his engine, gone

to where De Walt was lying, and had thereafter returned to his engine before the conversation with Sisson. This fact and the nature of the declaration itself does not leave it free from suspicion of premeditation and design. We think the evidence was properly excluded.

The court also refused to admit the testimony of Meece that Jordan Poindexter (the negro brakeman who was nearest De Walt when he fell and whose duty it was to couple the cars at that point), in the presence of De Walt, at the point where he fell, and in five minutes after the accident, declared in answer to a question from some bystander that he knew De Walt had been there cleating the car a few minutes before, but thought he had gone away. This is not open to the objections which excluded the declaration of McBride, and we are of opinion that the evidence should have ben received.

Appellees object that Poindexter's deposition was taken, and that he was not questioned upon this point. That had this been done, the declaration would have been clearly admissible as impeaching testimony. We think the mere fact that it was admissible in this character, subject to be limited in its effect by the charge of the court, would not deprive plaintiff of its use in its character as part of the res gestae. They of course were not admissible for impeaching purposes except upon the laying of a proper predicate, and though it was not objected to on that ground, it was not offered in its character as such. Had it been admitted generally over an untenable objection, the rule announced in Evanston v. Gunn, 99 U. S., 660, might apply. But in this case the objection urged as to McBride was tenable. If admissible upon another ground it should have been called to the attention of the trial court. Had it been offered for the other purpose, the court must perforce have excluded it on objection, for the reason that no predicate had been laid. In the taking of the deposition of McBride he was asked on cross-examination, "Is it not true that you could not open the throttle of this large engine quickly as the old locomotive without giving a sudden jerk to the whole train?" The witness' answer was, "Yes; easier without sudden jerk." This answer was objected to as evasive and irresponsive to the question, and an effort was made to suppress the deposition on that ground. The court's refusal to suppress the deposition is assigned as error. We do not think the answer open to the objection urged. While laconic (this perhaps due to the fact that it was in answer to the seventy-third cross-interrogatory), it fairly conveyed the information sought  We think the court also properly permitted the witness to state whether the train was made up and handled on that occasion in the usual and customary way  There can be no valid objection to the answer  It was, however, error to permit the witness and others to state that the train was being handled in a "careful and cautious manner," or "carefully and cautiously." Oliver v. Mahoney, 61 Texas, 610; City of Litchfield v. Anglin, 83 Ill. App., 55.

Burton was permitted to testify that about two months prior to the injury he had seen De Walt take a drink of whisky with a worthless

character, and had given him a lecture on the evils of drink.  Another witness testified that the day before the injury he had seen De Walt take a drink.  Another witness stated that he had seen him on some prior occasion under the influence of liquor.  Tew, a saloon-keeper, stated that he had taken one drink in his saloon on that morning, and had later remained in the saloon about ten minutes, but took no drink. This testimony was objected to, and its admission is assigned as error. We think the assignment should be sustained.  None of these witnesses claimed that De Walt, on the day in question, was under the influence of liquor to any extent, and Burton and Karr, who saw him going about his duties immediately before the accident, do not even hint that he was intoxicated.  Nor does the evidence indicate that his condition as to sobriety or drunkenness had anything to do with the accident. A part of this evidence might have been admissible in a bona fide effort to show that intoxication or partial intoxication was the cause of the injury, when the facts were present to raise the issue, but in no event could the temperance lecture of Burton, administered two months before, become admissible for any purpose.  Such evidence could only tend to prejudice the jury, and should have been excluded.  Railway v. Johnson, 49 S. W. Rep., 268; Railway v. Reason, 61 Texas, 613.

The court properly admitted the testimony of Burton and Karr as to the authority of Burton over the cars on the side track, and the control of the conductor over them when on the main track.  This evidence had a material bearing on the question of the negligence of Karr in failing to protect De Walt while engaged on the car, and has a like bearing on the question of contributory negligence on the part of De Walt.  But the charge of the court as affecting the bearing of this evidence upon the rights of the parties was in our opinion clearly erroneous.  In the event the car was shown to be on the side track when De Walt took the sealing irons and went to it, and if it further appeared that he continued his work upon it after it had been placed upon the main track, the court's charge precluded a recovery unless it appeared that the employes in charge of the train actually discovered his presence and danger in time to have prevented the injury.  If the employes actually knew of his presence and peril, a failure on their part to use every effort to prevent his injury would have entitled him to a judgment, even were he shown to be a trespasser.  We do not think any phase of the testimony places him in the attitude of a trespasser. This being true, it was error for the court to charge, in effect, that any act he is shown to have committed was negligence as a matter of law. Conceding that the authority of Burton ceased when the car left the siding, and that the conductor's exclusive control immediately attached, the fact remains that the point on the main track where the injury occurred was within a few feet of the point on the siding where the car originally stood.  It is undisputed that the conductor was present, and it was in answer to his complaint and refusal to take the car out unsealed that De Walt undertook to complete the work.  Under these

facts De Walt, whose duty generally was to perform what he was ordered by Burton to do in the preparation of cars for transportation, may have rightly assumed that the conductor had not, by the mere transfer of the car to the main track, withdrawn his demand that the car should be properly sealed and cleated before he would take it out. If De Walt then did in fact begin work on the car while on the siding, and if he in fact left it to get the cleats, and while away the conductor had the car transferred to the main track, and De Walt then resumed his work thereon, the question then is, did he in so resuming his work thereon without actually notifying the train crew, act, in the light of all the surrounding facts, as a person of ordinary prudence would have acted under the circumstances? The work to be done was on the exterior of the car, and a glance would have disclosed whether it had been completed. The inquiry then as affecting the acts of the conductor and other trainmen under this phase of the case is, did the conductor and other trainmen who had knowledge of the fact that De Walt had undertaken the work on the siding, act as persons of ordinary prudence in assuming that De Walt had completed his work and gone, or should they in the exercise of ordinary care have taken the pains to ascertain with certainty whether he continued the work after the car was placed on the main track? The court correctly charged that if the trainmen did not know of his presence on the car and had no reason to expect him to be there, he could not recover, but this was improperly made to depend alone upon whether De Walt was sent to do the work at a time when the car was on the main track. It should have been left to be determined by the jury from all the facts and circumstances in evidence. The mere fact that Burton's authority ceased when the car left the siding, and Karr's atached, would not alone preclude a recovery under the circumstances of this case, though the work be shown to have begun on the siding and resumed on the main track.

The errors in the main charge and special charges given are thus sufficiently indicated without disposing of them in detail.

The special charges requested by appellant and refused by the court were incorect in so far as they ignore the limitation of Burton's authority to the side track and the proper bearing of this fact upon the acts of the parties. This is a circumstance to be considered in connection with all the other circumstances in evidence in determining whether the conductor or other trainmen knew or sought to have known of his presence on the car. It is also a circumstance to be considered in measuring the quality of De Walt's acts, for if he knew or ought to have known that the employes had no reason to suspect his presence at that point, he should have made his presence known. If De Walt was sent to the car in the presence of the conductor, after it had been placed on the main track, then it was the conductor's duty, as the court charged, to warn him of the approach of the train, and De Walt had the right to rely on the discharge of this duty by the conductor. These refused special charges are thus referred to in view of

another trial. We do not wish to be understood by this reversal as indorsing them as correct in their present form.

The complaint that the court failed to instruct the jury upon the issues arising from the fact that the injury occurred at a point commonly used by the public as a thoroughfare and near public crossings, and upon the duty of the engineer to ring the bell or blow the whistle at such point, is without merit. We fail to see what possible bearing these facts could have upon the rights of the parties in this cause. De Walt was not using the track as a highway, nor does his right to recover depend in any sense upon the fact that the public had the right to use that point upon the track as a passway. He was present as an employe, and his right to be present depended upon that fact. The authorities cited have no application to the situation as presented by the record. We do not mean to hold, however, that evidence of the failure to ring the bell or blow the whistle at such points should not be admitted as bearing upon the question of care or negligence on the part of De Walt.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*