PECOS & N. T. RY. CO. et al. v. McMEANS.*
(No. 1031.)

(Court of Civil Appeals of Texas. Amarillo. June 28, 1916. Rehearing Denied Oct. 11, 1916.)

1. APPEAL AND ERROR ☞1068(2)—HARMLESS ERROR—INSTRUCTIONS—ACCIDENTS AT CROSSINGS.

In an action for personal injuries received at a railroad crossing, error in a charge, that "it is the duty of persons attempting to cross at a public crossing of a railway company to exercise ordinary care for their own safety," in not presenting the proposition that it is the duty of such person to stop, look, and listen, was harmless, where the jury found that defendant did not fail to stop, look, and listen.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4226; Dec. Dig. ☞1068(2); Trial, Cent. Dig. §§ 475, 525, 526.]

2. RAILROADS ☞352—ACCIDENTS AT CROSSINGS—ACTIONS—ISSUES.

An issue, "Did defendants fail to have a competent man stationed at the crossing to give warning?" sufficiently presented the question of whether there was a competent flagman at the crossing.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1216; Dec. Dig. ☞352.]

3. APPEAL AND ERROR ☞1062(1)—REVIEW—HARMLESS ERROR—SPECIAL ISSUES.

Where the jury answered, "No," being an affirmative finding to the issue, "Did the plaintiff fail to stop, look, or listen or to discover the approach of the box car upon defendant's track, or to observe and heed the signal and warning, if any given, by defendant's agents and employés?" and found in answer to other issues that plaintiff used ordinary care, the fact that each of the questions separated by "or" were separate issues and should have been submitted separately was harmless error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4212; Dec. Dig. ☞1062(1).]

4. DAMAGES ☞217—INJURY TO PROPERTY—MEASURE OF DAMAGES—INSTRUCTIONS.

In an action for damage to an automobile, a charge, that the measure of damages was the difference in its value before and after the injury, was abstractly correct, since an allegation of injury will authorize a recovery for all those damages which naturally and necessarily flow from the injury done, being the difference in value before and after in most instances and controlled by market value if there is any.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 556–559; Dec. Dig. ☞217.]

5. DAMAGES ☞217—INJURY TO PROPERTY—MEASURE OF DAMAGES.

Where the pleadings sought to recover the cost to repair an automobile, a charge, submitting as the measure of damages the difference in its market value before and after the injury, was incorrect, the issue being whether the repairs were reasonable and necessary, and the plaintiff being entitled to recover the difference between the market value after the repairs and before the injury, with reasonable and necessary expense in making the repair.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 556–559; Dec. Dig. ☞217.]

6. APPEAL AND ERROR ☞1140(1)—DAMAGES —ACCEPTANCE OF REMITTITUR.

Where the charge on measure of damages was incorrect, a remittitur of the amount of judgment for the repairs will be accepted.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4462, 4464, 4470–4474; Dec. Dig. ☞1140(1).]

7. TRIAL ☞351(5)—SUBMISSION OF ISSUES—REFUSAL OF REQUESTS — MATTERS OTHERWISE COVERED.

Refusal to submit a specially requested issue, which was sufficiently submitted under other issues and also covered by other issues in negative form, was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 834; Dec. Dig. ☞351(5).]

8. DAMAGES ☞184—INJURY TO PERSON — NEGLIGENCE IN TREATMENT OF INJURIES.

Where plaintiff was injured at a railroad crossing, the mere fact that he refused to permit a hypodermic to be used in easing him did not show a want of proper treatment, especially when it is not shown that failure to accept the hypodermic was a neglect of the case.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 502; Dec. Dig. ☞184.]

9. DAMAGES ☞184—PERSONAL INJURIES — NEGLIGENCE IN TREATMENT OF INJURIES.

Where plaintiff was injured at a railroad crossing, the mere fact that at the time of the accident he did not realize his injury and did not at once begin a treatment does not show negligence in treatment.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 502; Dec. Dig. ☞184.]

10. DAMAGES ☞174(1) — INJURY TO AUTOMOBILE—PLEADING—ISSUES.

In an action for damage to an automobile at a railroad crossing, where the pleadings sought recovery of the cost of repairs, evidence of the market value of the automobile just before and after the accident was inadmissible.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 462, 465, 467; Dec. Dig. ☞174(1).]

11. APPEAL AND ERROR ☞1052(1) — HARMLESS ERROR—EVIDENCE — EFFECT OF REMITTITUR.

In an action for damages to an automobile at a railroad crossing, where the pleadings sought recovery of the cost of repairs, error in admission of evidence of market value before and after the accident was rendered harmless by a remittitur of the whole amount recovered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4171; Dec. Dig. ☞1052(1).]

12. EVIDENCE ☞123(11) — ADMISSIBILITY — RES GESTÆ—STATEMENT OF EMPLOYÉ.

In an action for personal injuries received at a railroad crossing, caused by making a "flying switch," a statement, made immediately after the accident by the foreman of the switching crew, that he would be likely to lose his job, because he had an accident before in making a flying switch and had been reprimanded, was admissible as part of the res gestæ; it being an utterance instinctively made as the result of

impulse produced by the occurrence to which it related.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 365; Dec. Dig. ☞123(11).]

13. WITNESSES ☞330(1) — CROSS-EXAMINATION—SCOPE.

Such statement was also proper matter for cross-examination as affecting the weight of witness' testimony upon direct examination, to the effect that it had been the custom to make a drop switch since he had been in the yard.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1106; Dec. Dig. ☞330(1).]

14. COSTS ☞238(3)—ON APPEAL—WHERE REMITTITUR FILED AFTER APPEAL.

Where a judgment was affirmed after allowing a remittitur not filed until after appeal, costs of the appeal will be taxed against the appellee.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 913, 914; Dec. Dig. ☞238(3).]

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Suit by R. L. McMeans against the Pecos & Northern Texas Railway Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Madden, Trulove, Ryburn & Pipkin, of Amarillo, and Terry, Cavin & Mills, of Galveston, for appellants. Jones & Miller and P. S. Pearson, all of Amarillo, for appellee.

HUFF, C. J. R. L. McMeans, the appellee, brought suit against the appellant railway companies for damages occasioned by personal injuries received by himself, and damages to an automobile. He alleged substantially that on February 2, 1914, he was crossing at the Tenth street crossing in Amarillo, Tex., with one John Benson, in his automobile, and in attempting to cross the Tenth street crossing the automobile collided with a box car, which defendants negligently permitted to be shoved across said crossing; that it was nighttime, about 8 o'clock; and that appellants were making a flying or drop switch at said point and permitted the box car to roll across said crossing, without being under the control of any person and without having lights thereon, and without proper signals and warnings. There were some seven grounds of negligence specified as having been the proximate cause of the injury. He set out fully and specifically his injuries—both to himself and the auto. Appellants answered, denying the acts of negligence alleged, and pleaded contributory negligence and other matters not necessary to set out. The case was submitted to the jury on special issues, and in answer thereto they found that the appellants were guilty of negligence in each and all of the particulars alleged, and that the appellee was not guilty of contributory negligence. Judgment was rendered on the verdict for $2,401.70.

[1] The first assignment asserts error in the fourth paragraph of the court's charge that:

"It is the duty of persons attempting to cross at a public crossing of a railway company to exercise ordinary care for their own safety."

It is asserted as a proposition that it is the duty of such person to stop, look, and listen, and that he is not relieved from negligence by simply using ordinary care. The Supreme Court has said:

"The law is well settled that a traveler approaching a railroad crossing must exercise ordinary prudence in going upon the track to see that he may do so with safety." Railway Co. v. Ward, 100 Tex. 22, 93 S. W. 106.

The above case approves what was said with reference to a similar charge to the one here given, in Railway Co. v. Lee, 70 Tex. 496, 7 S. W. 857. The Ward Case, however, held the fact that the injured party admitted he had not listened or looked for the train before stepping on the track, under the circumstances of that case, were sufficient to establish he was not then in the exercise of proper care. Such is not the question here. If, however, the charge was not correct, the finding of the jury renders the error immaterial.

In answer to the twenty-fourth special issue, the jury found appellee did not fail to stop, look, and listen. Having found that he did the very thing which appellant claimed he should have done answers their objection made under this assignment.

[2] The sixth assignment objects to the seventh issue: "Did defendants fail to have a competent man stationed at the crossing to give warning?" The objection appears to be that the issue should have been submitted, whether there was a competent flagman at the crossing. The term, "a competent man to give warning," is substantially the same thing, under the facts of this case, and the jury evidently so considered it.

[3] The third assignment assigns error to the form of issue 24: "Did the plaintiff fail to stop, look, or listen, or to discover the approach of the box car upon defendant's track, or to observe and heed the signal and warning, if any given, by defendant's agents and employés?" The jury answered this question, "No." The form of the question and the jury's answer imply that the appellee failed in none of the things inquired about; in other words, it is an affirmative finding He did all the things asked about. This was not a matter to the injury of the appellant. The jury, in answer to other issues, found he used ordinary care in approaching and going upon the track and was not negligent in failing to discover the box car in time to prevent collision with his auto. We think the form of the question submitted, and the other issues and answers thereto, render the contention that each of the questions separated by "or" were separate issues and should have been submitted separately immaterial; if not in the proper form

became harmless under the findings. There was no injury to appellant by reason of the form of the issues under the answers given.

The fourth assignment is sufficiently answered by what is said under the third assignment.

The fifth assignment is that the court submitted an incorrect measure of damages as to the auto; that is, the value before and after its injury, because the pleadings did not warrant the measure of damages submitted.

The damages alleged was $151.70, expended in repairing the auto, in order to restore it to the condition it was before the accident. The difference in its market value before and after the injury was not sought to be recovered by the pleadings, but the cost to repair it and to restore it to its former condition.

[4, 5] The allegation of injury to the auto by the negligence of the appellant will authorize a recovery for all those damages which naturally and necessarily flow from the injury done. This, in most instances, is the difference in the value of the property before and after the injury, and, if there is a market value before and after for such property, that will control the measure. The charge of the court is therefore abstractly correct. Railway Co. v. Levi, 59 Tex. 674; Railway Co. v. Levy, 45 Tex. Civ. App. 373, 100 S. W. 195; Railway Co. v. Eddleman, 175 S. W. 775. The objection to the charge is that the pleadings did not authorize it. The appellee alleged that it cost to repair the auto $151.70. It appears in cases of this kind the owner may recover the difference between the market value after the repairs and before the injury, with a reasonable and necessary expense in making the repair. Cooper v. Knight, 147 S. W. 349. Under the pleadings, therefore, the appellee could not recover the full difference between the value just before and after the injury. The jury found such difference to be $250. The plea was that it took $151.70 in repair to restore it to the same condition as before the accident. If this is true, $151.70 would be the damages. The charge therefore was not warranted by the pleadings. The issue was whether the repairs were reasonable and necessary, and, if so, this would compensate for the injury.

[6] The appellee, in the court below, remitted all of the $250 over $151.70, the amount alleged. We might, under some circumstances, be able to say the result as to the two measures would be the same, and therefore no injury. In this case, however, the jury awarded nearly $100 more than it was alleged was required to restore it to its former condition. We suppose this resulted from the character of evidence adduced. It might be that, if the repair bill had been offered, its reasonableness could have been questioned. The issue was not submitted whether the repairs were made as alleged, or whether reasonable or necessary. It

occurs to us this is the issue that should have been submitted. The appellee offers in this court, in case we conclude the charge incorrect, to remit the amount of the judgment for the repairs to the auto. This offer we think, under the state of this record, should be accepted, which is here done. The evidence offered as to the measure of damages should have been confined, under the pleadings, as to whether the repairs were reasonable and necessary to restore the auto to its former condition.

[7] The sixth assignment is that the trial court erred in refusing to submit specially requested issue No. 5. We believe this issue was sufficiently submitted, under issues by the court, in issues Nos. 19, 24, and 27, and also other issues covered it in a negative form. There is no injury shown by this assignment.

The seventh assignment is overruled for the reasons given under the sixth assignment, and under the third and fourth assignments.

[8, 9] The eighth assignment is based on a refusal of the issue, at the request of appellant, as to what per cent. of appellee's personal injuries were occasioned by failure to use ordinary care in the care and treatment of his injuries. We find nothing, in the statement set out by appellant, showing negligence in the care and treatment of the injury received. The evidence simply shows that appellee did not realize he was injured at the time of the accident further than the jar. Later in the night he realized his condition and telephoned another physician. The mere fact that he refused to permit a hypodermic to be used in easing him did not show want of proper treatment, especially so when it is not shown that the failure to accept the hypodermic was a neglect of the case. The mere fact that at the time of the accident he did not realize his injury does not show negligence in the treatment. If it should be considered for anything, it was only as to whether there was any injury at all. We think it natural under the excitement of the moment that he would not realize his condition and that it would therefore raise no question of negligence in failing to at once begin a treatment; he then knew of nothing to treat, and, until he knew or realized his condition, ordinary care did not require it.

[10, 11] The ninth assignment, to the testimony of the witness, given as to the market value of the auto just before and after the accident, was not admissible under our construction of the pleadings. The reasons given by us under the fifth assignment will apply to this assignment; but, as the remittitur offered by appellee has been accepted by us, no such error is shown as will require a reversal.

[12] The tenth assignment is based on the testimony of L. J. Smith, on cross-examination, as to a statement he made to Dr. Mc-Means, at the time of the accident. This

witness was foreman of the crew engaged in switching on Tenth street, on the night and at the time and place of the accident. The following question and answer were objected to:

"Q. Didn't you make the statement out there immediately after the accident that you would likely lose your job because of the fact that you had made a flying switch before and had gotten took up on account of it? A. Yes, for the simple reason that I had put a car on the ground; I had an accident when I made that flying switch."

It was charged in the pleadings, as an act of negligence, that a flying or drop switch was made at a public crossing, and the issue developed whether such a switch was against a rule of the company, and whether the company permitted or forbade it. This witness, on direct examination, testified:

"It always had been usual and customary to make drop switches of that character at that place, ever since I had been in the yard."

[13] The objections urged to the question and answer were that the answer would not be binding upon the appellant and that negligence could not be predicated upon such statements. The evidence, aside from the question, shows the statement was made immediately after the accident. There was no objection made that the evidence was not part of the res gestæ or that it was hearsay. If this testimony was part of the res gestæ, it was admissible. The true test to be applied is whether the utterance was instinctively made as the result of impulse produced by the occurrence to which it related. This test, if applied to this evidence, under the issue was admissible. Instinctively the witness expected to lose his job because of the switch made causing the collision. He inferred this on the ground that he had an accident previous thereto from such a switch and had been reprimanded. Time is not so much an element as that it should be a spontaneous expression produced or caused to be made by the accident. The rule and the distinction are clearly stated in the case of De Walt v. Railway Co., 22 Tex. Civ. App. 403, 55 S. W. 534, cited by appellant; Railway Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; Railway Co. v. Pierce, 25 S. W. 1054; Railway Co. v. Gray, 95 Tex. 424, 67 S. W. 763. In addition to the above, we think this testimony was admissible on the question of the weight to be given to the witness' testimony upon direct examination, to the effect that it had been the practice and custom to make a drop switch since he had been in the yard. This was a proper cross-examination and tended to show the witness knew it was dangerous to make such a switch and that it was not the custom and practice to do so. Const. Co. v. Crawford, 39 Tex. Civ. App. 56, 87 S. W. 223.

[14] The case will be affirmed, after allowing the remittitur of $151.70, as of the date of the judgment; but the costs of this appeal will be taxed against the appellee, as the remittitur was not filed until after appeal.

Judgment affirmed.