## CHICAGO, R. I. & G. RY. CO. v. ZUMWALT. (No. 304–3617.)

(Commission of Appeals of Texas, Section A. April 12, 1922.)

1. Damages ⬤⟶113—Measure of damages to personal property not totally destroyed is difference in value immediately before and immediately after injury.

The measure of actual damages to personal property injured but not totally destroyed is ordinarily the difference between the value of the article at the time and place immediately before and immediately after the injury with legal interest, and this rule applies whether there is or is not a market value.

2. Damages ⬤⟶113—Cost of repairs to personal property and value of use during repairs and difference in value before injury and after restoration are recoverable.

Where personal property injured is susceptible of restoration, the measure of damages may be the reasonable cost of replacements and repairs, the value of use of the article during the time reasonably necessary to effect a restoration, and if the injured article, after such repairs as are practicable at reasonable expense, is worth less than before the injury, the difference in value before the accident and after repairs are completed may also be recovered.

3. Appeal and error ⬤⟶930(3)—In absence of submission of issue, presumed that court found value so as to support judgment.

In an action against a railroad company for damages to plaintiff's truck from collision where

the jury found the difference in value of the truck immediately before and after the accident was $1,500 and that the reasonable cost of repairs was $1,000, and the court entered judgment for $1,500, held, that under Rev. St. art. 1985, the court will be presumed to have found, in absence of special issue, that the value of the use of the truck during the time consumed in its repair and the difference in the value of the truck before the accident and in its repaired condition made up the difference between the two findings.

**4. Damages ⬤⟿221—Finding that a truck was lessened in value $1,500 by an accident, and that $1,000 was required to repair it held not necessarily inconsistent.**

In an action against a railroad company for damages to plaintiff's truck resulting from collision where the jury found the difference in value of the truck immediately before and after the accident was $1,500 and the reasonable cost of repairing it was $1,000, held, that the conflict in the findings is apparent only, and the court was justified in reconciling the same and entering judgment for the larger amount.

**5. Railroads ⬤⟿350(5)—Negligence in not placing watchman at crossing held for jury.**

In an action for damages to a truck from collision at a crossing, evidence held to justify the submission of the issue of negligence in failing to place a watchman at a crossing which the defendant had rendered temporarily dangerous by the position of its cars.

**6. Railroads ⬤⟿350(22)—Contributory negligence of truck driver held for jury.**

Driver of truck struck by passenger train passing standing freight train obstructing view held not guilty of contributory negligence as a matter of law.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by J. L. Zumwalt against the Chicago, Rock Island & Gulf Railway Company. Verdict and judgment for the plaintiff, and the defendant appealed to the Court of Civil Appeals for the Seventh District, which affirmed the judgment (226 S. W. 1080), and the defendant brings error. Judgment of the Court of Civil Appeals affirmed.

Lassiter & Harrison, of Fort Worth, and C. E. Gustavus, of Amarillo, for plaintiff in error.

Pearson & Monning, of Amarillo, for defendant in error.

GALLAGHER, J. J. L. Zumwalt, on March 27, 1920, owned and was operating for hire a federal truck. On that day in crossing the tracks of Chicago, Rock Island & Gulf Railway Company, at a public crossing in the town of Vega, said truck was struck by a passenger train operated by the said railway company and greatly injured and damaged. This suit was brought to recover such damages. There was a trial by jury on special issues. The jury found in response thereto that negligence of the railway company was the proximate cause of the accident; that Zumwalt was not guilty of negligence contributing thereto; that the difference in value of the truck immediately before and immediately after the accident was $1,500; and that the reasonable cost of the necessary new parts and of repairing other broken and damaged parts of said truck, to restore the same to the condition it was in immediately before the accident, was $1,000. The court entered judgment for Zumwalt and included therein the sum of $1,500 for damages to said truck. The railway company appealed, and the Court of Civil Appeals for the Seventh District affirmed the judgment. 226 S. W. 1080. The Supreme Court granted a writ of error on application of the railway company.

Plaintiff in error contends that the findings of the jury that the difference in the value of the truck immediately before and immediately after the accident was $1,500, and that the reasonable cost of necessary new parts and of repairing other broken or damaged parts to restore the truck to its condition immediately before the accident was $1,000, are so inconsistent and contradictory as to be insufficient to form the basis of any judgment. The testimony showed that the truck cost $3,275 without the body or cab; that it was in good condition; and that it was comparatively new, having been used for only a few months, and having been run a distance of only about 2,000 miles. The testimony further showed that it was materially damaged in the collision. Defendant in error described the injuries as follows:

"My truck was damaged as follows: The frame was twisted in three ways. The motor hanger was broken in two on both sides; and the case for the flywheel was busted across the top for about 12 inches. The crank case was busted up underneath. The carburetor was smashed all up like a dime all smashed up. The intake manifold was all broken up. The left hind wheel, there wasn't a spoke left in it. And the right front wheel, all of the spokes was cracked around the fellon and around the hub. The axle was bent. The steering rod was broken in it. The wind shield was broken. The top was broken. The side was torn loose from the front and the body was torn off of the truck. In other words, the whole thing broke up. I can't just tell you every piece that was broken. I could by going over it tell you every piece that was broken.

"This memoranda you hand me was made out by me—made by Mr. Bush and I together. Using it to refresh my memory, I will say the parts damaged, so far as I can just call them off of it, were: The motor hanger; the crank case; frame; headlight; front wheels, both of them; rear wheel; carburetor; top; curtains; wind shield; steering post; front axle; running board; fender; body, steering knuckle;

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Boomer chains, tool box; whistle; intake; manifold; seat; radius rods. The car otherwise was damaged. When it was throwed over that way, it throwed the gears into cramp and they were fastened all in high and I had to take the car apart to get the gears straightened out again, and the wheels—the hind wheels and tires were damaged some from skidding, long places knocked out of them. The hubs were—where the wheels had skidded down the track, why the hubs were all out of shape, and where you couldn't build another wheel in it and make it a true wheel. * * * The tires were damaged, the ones on the front wheels, where they were skidded down the track. The frame of the truck was bent in three different ways, was twisted, and some bolts was cut off in the frame. The top or body of the truck was torn loose from the back of the seat and had some holes torn in the top of it. The top part of it and the back part of it was torn all to pieces; there wasn't nothing left; the bows were all smashed out of shape and the curtains were torn all up and the wind shield; it was broken into several pieces. The body was torn off from the frame, and bent in several other places and broken. It is loose yet—just sitting on the truck. The motor hanger was broken on both sides clear across; and the motor, all that was holding it up was the crank case. I had a strap made to hold it up, so I could get it to town and use it around, just bolted on the frame from one side to the other to hold it up in place."

This testimony was corroborated in more or less detail by several other witnesses.

There had been at the time of trial no effort to restore the truck to its condition before the accident, though some comparatively trivial repairs had been made and it had been patched up so it would run. The court instructed the jury to entirely disregard these repairs and the cost of the same in arriving at their verdict, and no complaint is made of this charge.

Defendant in error pleaded that his truck was worth $2,700 immediately before the accident, and that it was worth only $200 immediately thereafter, and alleged that he had been damaged by the injury to the same in the sum of $2,500. The great preponderance of the evidence sustained the verdict rendered on this issue.

There was testimony that it was impossible to repair the bent and twisted frame so as to make it as strong as when it came from the factory, because of lack of facilities to do so. There was also testimony that it would require an expert mechanic to replace with new parts the broken parts of the engine, and that it would never run like it did before, even if this were done. There was also testimony that it was impossible to put the truck back in as good condition as it was before the accident, and that all this impaired its value.

There was evidence that the truck was in actual use at the time of the accident, and that some of the smaller parts used to patch it up so it would run could not be procured

short of Detroit. This evidence was practically undisputed except as hereinafter set out.

Plaintiff in error answered this issue by general denial only, and alleged no reason why the general measure of damage should not apply, and did not allege that the truck could have been restored to its original value by replacements and repairs, nor the reasonable cost of the same.

Plaintiff in error proved by witnesses for defendant in error on cross-examination the price of a part only of the injured and broken parts, and, by an admitted price list which included the parts so testified about on cross-examination, the cost of about one-half only of the parts shown by the testimony to have been injured or ruined. It was admitted that a witness in Dallas would testify to the prices as stated in said list, but it was not shown whether such prices were the cost of said parts at the factory in Detroit, at Dallas where the witness lived, or at Amarillo, where the trial was had. In most instances the testimony failed to show whether the injured or damaged parts were susceptible of effective repair or were totally ruined.

A witness for plaintiff in error testified that he had worked as a blacksmith for 15 years, but that for the last 5 years he had devoted about one-half of his time to general repairs on autos. He examined the truck just after the accident and discovered that one front wheel was smashed, the chasis bent, the carburetor bursted, the top demolished, one running board and one fender torn off, a rod broken, and the body or platform of the truck badly wrecked. He did not discover anything else. He testified he would have repaired these things, furnishing the lumber therefor for $90, but this did not include new parts, such as carburetor, etc. This was the only evidence of the cost of labor before the jury.

In this state of the evidence, plaintiff in error requested the submission of the issue of reasonable cost of repairing the car as follows:

"What amount do you find would be the reasonable cost of necessary new parts and of repairing other broken or damaged parts of plaintiff's truck to restore same to its former condition immediately before the accident at Vega, Tex., where same was struck by the train? Answer giving amount in dollars and cents."

Defendant in error objected to the submission of this issue on the grounds that: (a) There was no pleading to justify the submission of the same or on which such submission could be based; (b) there was no evidence justifying such submission or upon which a finding thereon could be based; (c) the same did not present the correct measure of damages and the court's main charge did present the correct measure.

The court overruled these objections and submitted the issue to the jury for a finding, and the jury answered the same, giving the sum of $1,000 as the reasonable cost of such new parts and repairs.

The court ignored this finding and included in the judgment rendered the sum of $1,-500 as the amount of damage to said truck, and based the same on the finding of the jury that said sum was the difference in the value of the same before and after the injury.

[1] The true measure of actual damages to personal property injured but not totally destroyed is founded upon the principle of fair compensation for the pecuniary loss sustained. According to the rule adopted in this state, this measure is ordinarily the difference in the value of the article injured at the time and place, immediately before and immediately after the injury, with legal interest. This rule is applicable alike in cases in which there is a market value for the article at the time and place of injury, and in cases where there is no market value and resort is had to actual or intrinsic value. This rule, save in exceptional cases, embraces and includes all the recoverable elements of damage and is supported by the great weight of authority as the general rule for the measurement of such damages. T. & P. Ry. Co. v. Levi, 59 Tex. 674, 679; Pacific Express Co. v. Lasker Real Estate Co., 81 Tex. 81, 16 S. W. 792; Pecos & N. T. Ry. Co. v. McMeans (Tex. Civ. App.) 188 S. W. 692, 694; 17 C. J. p. 877, § 183; 4 Suth. on Dam. § 1096; Southern Ry. in Ky. v. Ky. Grocery Co., 166 Ky. 94, 178 S. W. 1162, 1163.

[2] When the injured article is susceptible of restoration, a different rule is sometimes applied. In such cases the reasonable cost of replacements and repairs is one of the elements of recovery but not necessarily the only one. The value of the use of the injured article during the time reasonably necessary to effect such restoration may be recovered. If the injured article, after such repairs as are practical, at reasonable expense, is worth less than it was before the injury, the difference in the value of the article before the accident and after such repairs are |completed may also be recovered. 17 C. J. p. 877, 878, § 183; 4 Suth. on Dam. § 1096; 8 R. C. L. p. 490, § 51; Id., p. 493, § 54; Southern Ry. in Ky. v. Ky. Gro. Co., 166 Ky. 94, 178 S. W. 1162, 1163; Cooper v. Knight (Tex. Civ. App.) 147 S. W. 349, 351; Wells Fargo & Co. Express v. Keeler (Tex. Civ. App.) 173 S. W. 926, 927; Pecos & N. T. Ry. Co. v. Mc-Means (Tex. Civ. App.) 188 S. W. 692, 694; Andries v. Everitt-Metzger Flanders Co., 177 Mich. 110, 142 N. W. 1067; Perkins v. Brown, 132 Tenn. 294, 177 S. W. 1158, L. R. A. 1915F, 723, Ann. Cas. 1917A, 124 and note; McGuire v. Post Falls Lumber & Mfg. Co., 23 Idaho, 608, 131 Pac. 654, 656.

We quote from Southern Railway v. Southern Grocery Co., supra, as follows:

"Where an injury to personal property does not effect its destruction, that is, where it is susceptible of repair, the measure of damages is the difference between the reasonable market value of the property immediately before the injury at the place thereof, and its reasonable market value immediately after the injury at the place thereof. Evidence of the reasonable value of such repairs made necessary by the injury, as were required to place the property in usable condition, as well as evidence of its reasonable market value when repaired, is competent as bearing on the reasonable market value of the machine immediately after the injury. But if the property should be rendered by reason of the repairs, more valuable than it was before the injury, then of course the full expenditure for repairs should not be at the expense of the defendant. On the other hand, if by reason of the injury the property has been rendered incapable of being made, by repairing it, as valuable as it was immediately before the injury, the plaintiff should not be required to lose this deterioration. * * *

"The rule is that where an injury to personal property necessarily results in the loss of the use of the property while it is being repaired, the owner may also recover the reasonable value of its use during a period reasonably necessary to effect such repairs made necessary by the injury, as were required to place the property in a condition equal to, but not better than, that in which it was immediately prior to the injury."

We quote further from Perkins v. Brown, supra, as follows:

"The authorities are quite harmonious to the effect that the owner of a vehicle held for use may recover for the loss of its use, by reason of tortious injury, while being repaired, in addition to the cost of the necessary repairs. Brown v. Southbury, 53 Conn. 212, 1 Atl. 819; Johnson v. Holyoke, 105 Mass. 80; Mizner v. Frazier, 40 Mich. 592, 29 Am. Rep. 562; The Atlas, 93 U. S. 302, 23 L. Ed. 863; Sedgwick, Damages (9th Ed.) § 195."

The evidence in this case showed that the truck was in use at the time of the injury; that very elaborate replacements and repairs were made necessary by such injury; that some, at least, of the new parts required, could not be procured nearer than the factory in Detroit; and that, because of lack of facilities at Amarillo for doing the work of rebuilding required, the truck, after such replacements and repairs would not be as strong, would not run as well, and would not be worth as much, as before the injury.

[3] These issues being raised by the evidence, findings thereon were necessary to determine the actual damages suffered by defendant in error, if we attempt to apply, in measuring such damages, the theory of reasonable cost of restoring the truck by replacements and repairs. No request for the submission of these issues was made. In the absence of a request for their submission,

the court will be deemed to have made such finding thereon as will support the judgment rendered. Rev. Stats. art. 1985. We think the court will be presumed to have found that the value of the use of the truck during the time which would necessarily have been consumed in procuring and installing the new parts and repairing those not replaced, and the difference in value of the truck as originally built at the factory, and in its condition at the time of the injury, and the value it would have had if an attempt to restore it to its former condition had been made at Amarillo with the facilities at hand as testified by. the witness, would have equaled the difference in the amount of the two findings of the jury here under consideration.

[4] In view of all the. facts above recited, we think the conflict in said findings of the jury is apparent only, and that, when considered in the light of the whole record, they are not in fact contradictory, but are capable of being easily reconciled, and that the court was justified in reconciling the same and entering judgment for the larger amount, as he did do.

The conclusion above announced renders it unnecessary to pass upon defendant in error's contention that the submission of the issue of reasonable cost of restoration was without sufficient support in either the pleadings or the evidence.

[5] The court submitted for a finding by the jury whether plaintiff in error was guilty of negligence in failing to have a watchman at the crossing where the collision occurred at that particular time. The jury answered this issue in the affirmative. This was the only finding by the jury involving negligence on the part of plaintiff in error, and the judgment rendered is based thereon.

Plaintiff in error contends that the court erred in submitting this issue because the evidence was insufficient to justify such submission and that the affirmative finding returned by the jury in reply thereto is wholly without support in the evidence.

The accident happened at a public crossing where a regularly traveled highway crossed the tracks of plaintiff in error in Vega, a town of 300 or 400 people. At this crossing there were three tracks running east and west. The first track reached on approaching the crossing from the south was the team track; the second track was 30 feet north of the team track and was called the passing track; the third track was 14 feet north of the passing track and was called the through track, or main line. Certain buildings, together with some cars standing some distance west of the crossing on the team track, obstructed the view of the main line as defendant in error approached the crossing from the south. A freight train was standing on the passing track with its ca-boose within a few feet of the crossing and extending west the length of 30 cars or more. The cars and the buildings near the team track obstructed the view of the main line so that defendant in error, in approaching the crossing, could not see a train coming from the west on the main line until he had gotten past the team track. There the view of the main track was obstructed as far west as the standing train extended. Only after passing the caboose of the train on the passing track could he get an unobstructed view of the main line, and he was then in a few feet of the same. A strong wind was blowing from the south and the air was full of dust and dirt. One witness described it as a gale, and another said it roared in the ears and interfered with the hearing. The force and noise of the wind was probably sufficient, in view of the obstructions, to prevent the discovery of the approaching train until after passing the standing caboose. The regular east-bound passenger train was a few minutes past due. As defendant in error on his truck passed the standing caboose, he, for the first time, discovered the passenger train coming from the west and almost upon him, and it was then impossible to avoid the accident. He testified he was going slowly; that he looked and listened for approaching trains before he reached, and as he entered upon, the crossing; but that he did not see any smoke, hear any bell or whistle, or anything else.

There is no contention on the part of defendant in error that the exercise of ordinary care on the part of the railway company required it to keep a watchman at this crossing, under ordinary circumstances. He contends that the evidence showed an unusual situation and one which greatly increased the hazard to the traveling public at the very time of the accident.

The evidence showed that the condition existing at the time was created in part by the act of employees of plaintiff in error in stopping the freight train in such position as to obstruct the view of the main line when approached from the south. The standing freight train, together with the obstructions on and near the team track and the roaring of the wind and the dust and dirt blown thereby, all contributed to make it dangerous to pass over said crossing from the south at that particular time. The momentarily expected arrival of the passenger train was necessarily known to the employees of plaintiff in error, but the traveling public will not be presumed to have known such fact. Defendant in error testified that he did not know that the train was due. An especially dangerous situation was created by this combination of circumstances. The duty of plaintiff in error to exercise ordinary care to enable the traveling public to pass over the crossing in safety was measured by the

situation. Its duty to meet such situation arose when the special hazard arose and continued while such hazard continued. It reached the crucial point just as the passenger train entered upon the crossing from behind the standing freight train. It was at this critical instant that defendant in error passed from behind the standing caboose onto the main line and a collision' was then inevitable.

There was evidence justifying the submission of the issue, and the verdict is not without evidence to support it. Tisdale v. Panhandle & S. F. Ry. Co. (Tex. Com. App.) 228 S. W. 133, and authorities there cited.

[6] The evidence in this case does not show contributory negligence on the part of defendant in error as a matter of law.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of Supreme Court.