**DAVENPORT et ux. v. TEXAS & N. O. R. CO. et al.**

No. 7982.

Court of Civil Appeals of Texas. Austin.

May 23, 1934.

W. A. Morrison, of Cameron, for appellants.

Henderson, Kidd & Henderson, of Cameron, for appellees.

934

BLAIR, Justice.

Appellant Charles Davenport, joined by his wife, sued appellee Texas & New Orleans Railroad Company and others, for $2,500 as damages for the death of his daughter, sixteen years of age, who was struck and killed by appellee's passenger train. Appellant alleged that the deceased and other school children used the track of appellee at the place of the accident as a path for going to and returning from school, and had done so for several years prior to the accident, with the full knowledge and acquiescence of appellee. That on the morning of the accident a violent south wind was blowing, making it impossible for the deceased to hear the approaching train from the north; and while walking south on the track deceased was struck and killed by appellee's passenger train as the result of the negligence of the operatives of the train: (1) In failing to blow the whistle or ring the bell as warning of the approaching train; (2) in failing to keep a reasonable lookout for deceased and warn her of the approaching train; and (3) that from the place of the accident to the north, the direction from which the train was approaching, there was a clear and unobstructed view for almost one mile, and that the operatives of the train, in the exercise of ordinary care, should have discovered the deceased in time to have avoided the accident.

Appellee answered by a general demurrer and general denial, and three alternative special defenses: (1) That the deceased saw the train and left the track and placed herself in a position of safety, but as the train was passing negligently left her place of safety and moved toward the passing train, and was struck by the rear portion of it and killed; (2) that the deceased negligently and carelessly failed to watch for and to look for the approaching train, which negligence caused her death; and (3) that the deceased left her place of safety and, while returning to the track as the train was passing, accidentally fell or stumbled into the rear portion of the train; and that her death was therefore due to an unavoidable accident.

In answer to special issues presenting appellant's theory of the case, the jury found that the operatives of the train (1) failed to keep a proper lookout for deceased walking along the track, and (2) failed to blow the whistle and ring the bell as a warning to her of the approaching train; and that each of such acts of negligence was the proximate cause of her injury and death. The jury further found that the operatives of the train

did not see the deceased in a position of danger on or near the track in time to have prevented her injury by the use of the means at their command. However, in response to special issues submitting the defense of contributory negligence, the jury found that the deceased failed to keep a reasonable lookout for the approaching train at the time of or immediately preceding the accident; that such failure was "negligence" as defined in the charge; and that such negligence proximately caused or contributed to cause the injury and death of the deceased. Upon these findings of contributory negligence, judgment was accordingly rendered for appellee.

Appellant objected to the submission of the special issues with regard to contributory negligence, because not supported by any evidence; and this is the principal question presented here.

No one saw the accident. The deceased was sixteen years of age, intelligent, of good memory, with no defects of hearing or sight, nor any physical defect of any character which would have prevented her from looking for or hearing the approaching train. Deceased was walking south on the track and had been for about one-half mile from the point of the accident. From the point of the accident north the track was perfectly straight for more than a mile, and there was nothing to obstruct her view, nor to prevent her from seeing the train for one mile before it reached her, if she had looked. The schedule for the train had been the same for more than a year, and it was running on time. The deceased and her brothers and sisters had walked along the track going south to school each school morning for several months prior to the accident. She knew the schedule and knew the train passed them practically every morning before the children reached the schoolhouse. Her fourteen year old sister and the smaller brothers were, according to testimony of the sister, some few steps ahead of deceased. This sister looked back and saw the approaching train and saw deceased immediately prior to the approach of the train on the west side of and near the track, but did not see her again until she found her lying near the track immediately after the train passed, due to the fact that she had busied herself with getting the smaller children off the track and on the embankment some three or four feet high, while the train was passing. Tracks of a person led down the embankment to the track and where blood was found on the ground at the point of the accident. The

brakeman who was riding in the rear coach heard something strike at or near the rear steps, and immediately arose and looked from that position, and saw the child on the ground and attempted to give a signal to stop, which was not answered; and he gave the second signal, which was obeyed, and the train was brought to a stop about one-half mile beyond the point of the accident. A passenger sitting on the last seat of the coach heard the "thud" or noise of deceased striking near the rear portion of the coach. Blood, hair, and skin were found on the lower rear step of the coach. Deceased was struck immediately behind her left ear and on the left side of the head, crushing her skull. She was placed on the train and started to Rockdale for medical attention, but died before reaching there without ever becoming conscious.

■ In walking along the track under the circumstances detailed, the deceased, though a licensee, was under duty to keep a reasonable lookout for approaching trains at all times for her own safety. This she did not do according to the findings of the jury, which findings are supported by the evidence aforementioned.

■ Appellant also complains that the issue submitting contributory negligence as whether deceased "failed to keep a reasonable lookout for the approach of the train at the time of or immediately preceding the accident" was erroneous: (1) Because it failed to follow the defensive pleadings that deceased's injury was due to "carelessness on her part and to her failure to keep such reasonable lookout for said train as an ordinarily prudent person of her age and intelligence should have kept, and would have kept under the same or similar circumstances"; (2) because the proper test in all cases of negligence is what a reasonably prudent person would do or should have done under the same or similar circumstances; and (3) because the issues submitted failed to take into consideration the "Humanitarian Doctrine," under which the degree of care required of a person who has placed himself in a position of danger is no longer such that any degree of negligence on his part will preclude his recovery for injury sustained due to the negligence of another.

The only objection made to the manner or form of submitting the issues of contributory negligence was that there was no evidence to support them as a matter of law. The statutes and decisions of this state require that objections to a court's charge or to the manner or form of submitting a special issue shall be presented to the trial judge before the charge or special issue is submitted to the jury. Rev. Civ. Stats. of Texas, art. 2185; T. & N. O. R. R. Co. v. Owens (Tex. Civ. App.) 54 S.W.(2d) 848; Isbell v. Lennox, 116 Tex. 522, 295 S. W. 920; Walker v. Haley, 110 Tex. 50, 214 S. W. 295; Norwich, etc., Co. v. Wilson (Tex. Civ. App.) 17 S.W. (2d) 68.

■ In view of this requirement, we need not discuss whether it was error to submit the special issues in the manner and form in which they were submitted. Manifestly, the failure to incorporate the matters complained of in the special issues, if proper, upon which we do not pass, is not fundamental error, since no objections whatever were made to the manner or form of submitting the issues, except that there was no evidence to support them. It may be stated, however, that the issues submitting contributory negligence made the test therefor what a reasonably prudent person would do or should have done under the same or similar circumstances. The first question asked if the deceased failed to keep a reasonable lookout for the approaching train. The second question asked if such failure to keep a lookout was "negligence" as that term was defined in the charge; and the charge defined "negligence" as "the want of such care as an ordinarily prudent person would have exercised under the same or similar circumstances." The third question asked if such negligence proximately caused or contributed to cause the injury, and the term "proximate cause" was properly defined in the charge, and required the jury to find that the event "must have been reasonably anticipated by a person of ordinary prudence." So it appears that the court made the test of contributory negligence what a reasonably prudent person would do, or should have done, under the same or similar circumstances.

■ Appellant's remaining propositions complain of the admission of certain statements or of conversations between the engineer and conductor of the train at the time same was stopped and immediately preceding its being backed up to the scene of the accident. Both the engineer and conductor died between the time of the accident and the trial of this case. The brakeman testified that he gave one signal, but received no response, and gave the second, whereupon the train was stopped. The train was running at the rate of 30 or 35 miles per hour. Immediately after the train stopped, the bag-

gage or express man opened the door of his compartment in the front coach, and heard the brakeman tell the engineer and conductor "that he thought we have hit somebody." That the engineer replied: "He said he did not think he had hit any of the children * * * because they were upon the embankment when he passed them." As the train stopped the mail clerk opened the door of his compartment in the front coach, at which time he heard, "the conductor asked the engineer if he had struck something, and he said, no, and he wanted to know what was the matter, had he struck something, and he said no." The only objection to this testimony was that "the doctrine of res gestæ does not apply to outside conversations; where the injured person and somebody talks is when it applies; it does not apply to strangers."

Manifestly the conversation could not be excluded on the ground stated in the objection. But appellant insists that the statements were merely self-serving declarations made by the agents of appellee in an effort to exonerate it from liability for the injury to deceased; and that same were not admissible as res gestæ because they were not made at the time of nor near the time of the accident; and not before the witnesses had time to calculate the probable effect of the statements made by them.

We have reached the conclusion that the statements were admissible under the rule stated in 17 Tex. Jur., 614, § 257, as follows: "Generally speaking, all acts or declarations of the parties are a part of the res gestæ when they are a part of the transaction in question, or when they are contemporaneous with and accompany it and tend to explain or illustrate it, or are calculated to throw light upon the motives and intentions of the parties to it, or when, though they do not accompany the transaction, they spring out of it and tend to explain it, and are voluntary and spontaneous, and made at a time so near it, or under such circumstances as to exclude the idea of premeditation and design."

See, also, Continental Ins. Co. v. Pruitt, 65 Tex. 125; I. & G. N. R. R. Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; Panhandle & S. F. Ry. Co. v. Laird (Tex. Civ. App.) 224 S. W. 305; DeWalt v. Houston, etc., Co., 22 Tex. Civ. App. 403, 55 S. W. 534; H. & T. C. R. R. Co. v. O'Donnell (Tex. Civ. App.) 90 S. W. 886; M., K. & T. Ry. Co. v. Vance (Tex. Civ. App.) 41 S. W. 167; I. & G. N. v. Bryant (Tex. Civ. App.)

54 S. W. 364; G., C. & S. F. Ry. Co. v. Tullis, 41 Tex. Civ. App. 219, 91 S. W. 317; T. & P. Ry. Co. v. Robertson, 82 Tex. 657, 17 S. W. 1041, 27 Am. St. Rep. 929; H. & T. C. R. R. Co. v. Loeffler (Tex. Civ. App.) 51 S. W. 536 (error dis.); I. & G. N. R. R. Co. v. Hugen, 45 Tex. Civ. App. 326, 100 S. W. 1000 (error ref.); 22 C. J. 451–454, 458–461, 462–465, 467.

The declarations and statements of the train operatives were clearly explanatory of the reason for stopping the train, and in response to the accompanying statement of the brakeman who gave the signal that he thought "we have hit something." The engineer spontaneously replied that "he did not think he had hit any of the children * * * because they were upon the embankment when he passed them." These statements were made under the immediate influence of the accident, and were not only spontaneous and explanatory, but rather exclamatory in their nature. They were made immediately upon the engineer being told it was thought the train had hit somebody; and the fact that some two or three minutes had passed since the accident was important only on the question of spontaneity; and the witness showed that he knew nothing of the accident until told of it after the train stopped, and he immediately made the explanatory and spontaneous statement complained of.

The judgment of the trial court will be affirmed.

Affirmed.